Jorge S. ZUNIGA; Jorge S. Zuniga, M.D., P.C., Plaintiffs–Appellees, Cross–Appellants,

v.

BLUE CROSS AND BLUE SHIELD OF MICHIGAN, a Michigan non-profit corporation, Defendant–Appellant, Cross–Appellee,

Preferred Health Care, Limited, a Delaware Corporation, Defendant–Appellee.

Nos. 93–1536, 93–1872.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 9, 1994.

Decided May 2, 1995.

David A. Nelson, Circuit Judge, filed opinion concurring in part and dissenting in part.

John A. Michalsen (argued and briefed), Alan T. Rogalski (briefed), Frimet & Michalsen, Southfield, MI, for Jorge S. Zuniga, Jorge S. Zuniga, M.D., P.C.

Edward W. Fisher (argued and briefed), Debra A. Spicer (briefed), Detroit, MI, for Blue Cross & Blue Shield of Michigan.

Vivian Perry–Johnston, Bloomfield Hills, MI, for Preferred Health Care, Ltd.

Before: MARTIN, NELSON, and DAUGHTREY, Circuit Judges.

MARTIN, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. NELSON, J. (pp. 1402–1406), delivered a separate opinion concurring in part and dissenting in part.

BOYCE F. MARTIN, Jr., Circuit Judge.

In this appeal, Blue Cross and Blue Shield of Michigan and Jorge Zuniga both challenge the district court's decisions regarding the preemption of Zuniga's state law claims under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* Blue Cross appeals the district court's finding that ERISA *did not* preempt two of Zuniga's claims based on Michigan statutory law. Zuniga, in turn, cross-appeals the district court's decision that ERISA *did* preempt his

breach of contract claim. For the following reasons, we find that Blue Cross's appeal is not reviewable by this Court and affirm the district court's decision regarding Zuniga's breach of contract claim.

## I.

Zuniga is a certified psychiatrist who has been involved in a long-running feud with Blue Cross of Michigan. Their dispute dates back to 1979, when Zuniga was "departicipated" from Blue Cross, meaning that Blue Cross would no longer directly pay him as a participating physician for treating covered patients. Blue Cross alleged that Zuniga overutilized medical procedures and performed unnecessary procedures. Zuniga filed suit, and after nine years reached a Settlement Agreement with Blue Cross in July 1988. Pursuant to this agreement, Zuniga became a participating physician again, Blue Cross agreed that in the future Zuniga would not be treated differently than any other provider, and Blue Cross agreed to pay Zuniga $250,000.00 for personal injuries.

Blue Cross and Preferred Health Care, Ltd., administer various psychiatric managed care programs. Preferred Health Care, Ltd., administers health care programs at General Motors and other companies. These programs rejected Zuniga as a preferred provider. However, Preferred Health Care is not a party before this court as it did not appeal the district court's decision. In 1988, Blue Cross began Pilot Managed Health Care Programs at both Chrysler and Ford. These programs were established following collective bargaining agreements, between Chrysler and Ford and the United Auto Workers, with the goal of containing costs. These programs are health care benefit plans established for the benefit of Chrysler and Ford employees and retirees. As such, each meets the definition of an "employee welfare benefit plan" under ERISA, 29 U.S.C. § 1002(1) (1988). In order for a doctor to be fully compensated by Blue Cross, these plans require that certain mental health services be provided by a panel of approved providers. Zuniga applied for preferred provider status with the Chrysler plan, but was rejected due to overutilization. Subsequently, he was removed from the Ford plan's panel of preferred providers for similar reasons, overutilization and excessive cost generation. Zuniga then brought suit in state court.

Zuniga filed two Verified Complaints, which have since been consolidated, alleging that Blue Cross's and Preferred Health Care's actions in denying him access to the preferred provider panels were arbitrary and illegal. Specifically, Zuniga's first complaint, naming only Blue Cross as a defendant, had five counts: Count I alleged a breach of contract involving the 1988 Settlement Agreement; Count II alleged a denial of Due Process under both the Michigan and United States Constitutions; Count III alleged a violation of the Michigan Non–Profit Health Care Corporation Act, Mich. Comp. Laws § 550.1501 *et seq.;* Count IV alleged that Zuniga had and would continue to suffer irreparable injury; and Count V alleged a violation of the Prudent Purchaser Act, Mich. Comp. Laws § 550.53. When Zuniga learned that Preferred Health Care was involved in the selection of preferred providers, he filed a second complaint adding Preferred Health Care as a defendant and alleging a conspiracy between Preferred Health Care and Blue Cross to commit a tortious interference with an advantageous business relationship. In that complaint, Zuniga also claimed that this was done to retaliate against him for asserting his First Amendment rights, among others, in seeking a remedy for wrongs allegedly committed by Blue Cross.

Preferred Health Care and Blue Cross removed this case to the district court, alleging ERISA preemption as a basis for jurisdiction. Zuniga filed a motion to remand which was denied, as was a motion for a preliminary injunction. On September 16, 1991, Blue Cross moved to dismiss the case, pursuant to Fed.R.Civ.P. 12(b)(6), based on ERISA preemption. Blue Cross argued that Zuniga's state law claims "related to" an employee benefit plan, and were thus preempted by ERISA. The district court granted in part and denied in part this motion on February 6, 1992. It denied the motion to dismiss as to Count II, the Due Process claim, and granted it as to Count IV, the tortious interference with business rela-

tionships claim. The court's decision as to these counts has not been challenged. Therefore, on appeal we are only concerned with Counts I, III, and V.

The district court dismissed Count I, alleging breach of contract. The court found that ERISA preempted that claim because it related to an ERISA plan. However, the court held that Counts III and V, which alleged violations of Michigan statutory laws, were *not* preempted by ERISA. Therefore, it denied the motion to dismiss as to these counts and remanded them to state court. In doing so, the court found that both counts stated causes of action governed by state insurance laws and any connection to ERISA was "peripheral at best." Thus, in the district court's order, as amended April 3, Counts I and IV were dismissed, Counts III and V were remanded to the state court, and only Count II, the Due Process claim, remained before the court.

On March 6, Blue Cross appealed the court's denial of its motion to dismiss as to Counts III and V. Zuniga cross-appealed the court's dismissal of Count I on March 19. This Court found that it was without jurisdiction to hear these appeals and dismissed them *sua sponte*. *Zuniga v. Blue Cross*, No. 92–1315/1348 (6th Cir. Sept. 30, 1992) (unpublished order). Unfortunately for Blue Cross, it failed to meet the requirements of an interlocutory appeal. 28 U.S.C. § 1292(b) (1988). Because the appeal was not certified as an interlocutory appeal under Section 1292 or Fed.R.Civ.P. 54(b), and the order disposed of less than all the claims involved, this Court found it was nonappealable. *Zuniga*, No. 92–1315/1348 at 2 (citing *William B. Tanner Co. v. United States*, 575 F.2d 101, 102 (6th Cir.1978)). Also, the district court's order was not a final judgment at that time because the Due Process claim was yet to be resolved.

In the district court, Blue Cross moved for summary judgment on the Due Process claim, arguing that it was not a state actor subject to Constitutional Due Process requirements. On April 5, 1993, the district court granted summary judgment for Blue Cross and dismissed Zuniga's complaint. Blue Cross then filed a Notice of Appeal on April 7, challenging the district court's ruling on its motion to dismiss regarding Counts III and V. After receiving an extension of time to file an appeal, Zuniga cross-appealed from the same Amended Order's ruling that Count I was preempted by ERISA. Preferred Health Care has not filed an appeal to this Court, and the underlying action has been completely dismissed by the district court. Thus, just as they previously attempted to do, both parties on appeal now are challenging the district court's Amended Order Granting in Part, Denying in Part and Remanding in Part Defendant Blue Cross and Blue Shield of Michigan's and Preferred Health Care, Ltd.'s Motions to Dismiss.

## II.

Of initial concern to this court is whether this case was properly removed to the district court in light of our recent decision in *Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir.1995) (*en banc*). On August 22, 1991, Preferred Health Care filed a Notice of Removal, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, in which Blue Cross joined. In its Notice, Preferred Health Care argued that the district court had original jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and/or 28 U.S.C. § 1343, which confers original jurisdiction over civil rights actions. Although the Notice states that Zuniga's complaint alleged retaliation for exercising his First Amendment rights, it also states that ERISA governs the health care programs involved, and Zuniga's state law claims are therefore preempted.

As we noted in *Warner*, this raises a concern because "pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). However, *Metropolitan Life* recognized a narrow exception to this rule for "complete preemption." Still, that exception

> is narrowly limited in the ERISA context
> to state common law or statutory claims
> equivalent to ERISA civil enforcement ac-

tions governed by 29 U.S.C. § 1132(a)(1)(B) because "the legislative history consistently sets out this clear intention to make [§ 1132(a)(1)(B) ] suits brought by participants or beneficiaries federal questions for the purpose of federal court jurisdiction...."

*Warner,* 46 F.3d at 534 (quoting *Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. at 1547).

Section 1144 is the ERISA preemption provision; it provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan...." 29 U.S.C. § 1144(a) (1988) (emphasis added). Section 1132 is the civil enforcement provision. "A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (1988). In *Warner,* we held that

> [Section 1144] allows ERISA to preempt state laws when they "relate to" matters governed by ERISA but does not create a federal cause of action for matters which only "relate to" ERISA's field of concern. Thus[,] § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, *no removal jurisdiction exists under § 1144.*
> ...
> [However,] State causes of action not covered by § 1132(a)(1)(B) may still be subject to a preemption claim under § 1144(a) ... because the state law at issue may "relate to" a pension or employee benefit plan. *But such actions are not subject to removal.*

Removal and preemption are two distinct concepts. "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted"—for example under § 1144(a)—"does not establish that they are removable to federal court. *Caterpillar [Inc. v. Williams],* 482 U.S. [386,] 398 [107 S.Ct. 2425, 2432, 96 L.Ed.2d 318 (1987)]. The federal preemption defense

in such nonremovable cases would be decided in state court....

*Warner,* 46 F.3d at 534–35 (emphasis added).

■ Therefore, were this simply a case involving state claims not covered by Section 1132(a)(1)(B), its removal would be improper under *Warner.* This appears to be the situation here because Zuniga is neither a plan participant nor a beneficiary, although he does seek to recover benefits from an employee benefit plan. However, Count II, the Due Process claim, complicates matters further. Despite the fact that ERISA preemption does not confer federal jurisdiction over these claims, any civil action of which the district court has original jurisdiction may be removed under 28 U.S.C. § 1441(a) (1988). Alleging a violation of the Due Process clause of the United States Constitution provides original federal question jurisdiction, under 28 U.S.C. § 1331 (1988), over Count II. The district court could then exercise supplemental jurisdiction over "all other claims that are so related to claims in the action ... that they form part of the same case or controversy...." 28 U.S.C. § 1367(a) (Supp. V 1993). Thus, this case was properly removed to the district court despite the restrictions of *Warner.*

### III.

Blue Cross's appeal challenges the district court's denial of its motion to dismiss Counts III and V as not being preempted by ERISA. Thus, Blue Cross argues at length concerning the scope of ERISA preemption and whether these counts fall within it. However, despite Blue Cross's preemption analysis, substantively it is challenging the district court's order to remand these counts to state court. Although Zuniga does not contest our authority to consider Blue Cross's appeal, we are obligated to ensure that we have jurisdiction over this matter.

■ Regrettably for Blue Cross, we are constrained from reaching the merits of its argument. Where an order of remand is appealed, 28 U.S.C. § 1447 (1988 & Supp. V 1993) presents a "seemingly ironclad bar to review—no matter how the appeal is fashioned." *Baldridge v. Kentucky–Ohio*

*Transp., Inc.*, 983 F.2d 1341, 1343 (6th Cir. 1993). With an exception for civil rights cases not applicable here, Section 1447 states: "An order remanding a case to the State court from which it was removed *is not reviewable* on appeal or otherwise. . . ." 28 U.S.C. § 1447(d) (1988) (emphasis added). Section 1447(d) was enacted so that, once remanded, "state court actions could proceed without delay" regardless of the correctness of federal courts' jurisdictional decisions. *Mobil Corp. v. Abeille General Ins. Co.*, 984 F.2d 664, 666 (5th Cir.1993). "Congress could not have written a clearer statute. . . . Any fair and honest reading of [Section 1447(d) ] mandates that no appellate court will review a district court's decision to remand a case unless the case was removed pursuant to section 1443." *Ohio v. Wright*, 992 F.2d 616, 620 (6th Cir.1993) (*en banc*) (Martin, J., concurring). We share Justice Stevens' sentiments that "[o]ur work would certainly be much easier if every case could be resolved by consulting a dictionary, but when Congress has legislated in general terms, judges may not invoke judicial modesty to avoid difficult questions." *Holder v. Hall*, —— U.S. ——, ——, 114 S.Ct. 2581, 2629, 129 L.Ed.2d 687, 748 (1994) (Stevens, J., concurring). Section 1447(d) is unquestionably an instance where appellate courts' failure to use a dictionary and follow Congress's clear mandate has complicated their task.

Despite the plain language of Section 1447(d), the Supreme Court has limited its proscription. *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). There, the court held that only remand orders issued under Section 1447(c) were non-reviewable. *Id.* at 346, 96 S.Ct. at 590. Section 1447(c) provides in pertinent part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447 (1994). *Hermansdorfer* has led courts to find exceptions to Section 1447(d)'s clear proscription wherever a case was remanded for reasons not specified in the statute. It has also caused some circuitous analysis in the area of ERISA preemption and remand orders. For example, the Fifth Circuit found

in *Hook v. Morrison Milling Co.*, 38 F.3d 776, 780 (5th Cir.1994), that after all federal law claims have been eliminated, a district court's decision to remand pendent state law claims is reviewable for an abuse of discretion. However, whether the district court had such discretion in the first place is a legal determination, reviewable *de novo. Id.* This forced the court to decide whether or not ERISA preempted the plaintiff's suit. If not, no federal claims exist that would require the district court to maintain jurisdiction. If ERISA did preempt the plaintiff's suit, however, that would mean the district court was without discretion and the appellate court should not have reviewed its decision or gone through its analysis of ERISA preemption.

■ Nevertheless, after *Hermansdorfer*, "[i]f a district court remands a case based on the grounds listed in [Section 1447(c) ], this [C]ourt cannot review the remand order." *Van Meter v. State Farm Fire and Cas. Co.*, 1 F.3d 445, 449 (6th Cir.1993). This is true even if the district court's decision to remand is "based on erroneous principles or analysis." *Id.* Still, even given these limitations, Section 1447(d) does not allow us to review Blue Cross's appeal.

■ Here, the district court's order itself does not specify the reason for remanding these counts. However, in the hearing on the motions to dismiss, the court stated that

> Both of these counts state causes of action to and governed by state insurance laws. *Any connection to an ERISA plan is peripheral at best.* Further, these two counts are *not preempted* under the savings clause of ERISA, referencing Section 1144(b)(2)(A).

> Accordingly, it is hereby ordered that the pendent state law claims of plaintiffs' complaint[,] as alleged in . . . Counts 3 and 5[,] be remanded to the Circuit Court for Wayne County, Michigan.

(Tr. 1/28/92) (emphasis added). Although the court went on to note that, in its discretion, resolution of these claims would be unduly burdensome, this observation was not necessary to its decision to remand. Clearly, the court remanded these claims because they

were not preempted by ERISA and hence the court found it was without subject matter jurisdiction. Thus, Section 1447(d) precludes our review of this decision on appeal.

## IV.

Zuniga challenges the district court's decision to dismiss the breach of contract claim contained in Count I as being preempted by ERISA. Zuniga argues that this count does not relate to an employee benefit plan governed by ERISA. He maintains that the breach of contract claim "alleges nothing to do with the substance or administration of any employee benefit plan." Rather, Zuniga claims that the cause of action is directed against Blue Cross and not the plan or its participants. However, we are not persuaded by Zuniga's position.

■ ERISA preempts state law claims that "relate to" any employee benefit plan. 29 U.S.C. § 1144(a) (1988); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). "The pre-emption clause is conspicuous for its breadth.... [A] law relates to an employee welfare plan if it has 'a connection with or reference to such a plan.'" *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). Congress used the words "relate to" in their broad sense. *Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900. Moreover, "State law" was defined using equally broad language, to include "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1) (1988). Thus, "[u]nder this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (quoting *Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1552–53). Count I of Zuniga's complaint alleges that Blue Cross breached the settlement agreement by "resurrecting the previously refuted allegation" of overutilization "as a reason for denial of his application to be an authorized provider for the [ERISA plan]." Clearly this claim "relates to" an employee welfare plan as it explicitly "refer[s] to such a plan." *FMC Corp.,* 498 U.S. at 58, 111 S.Ct. at 407.

■ Zuniga argues that ERISA does not preempt claims for which it does not provide a remedy. *Perry v. P*I*E Nationwide, Inc.,* 872 F.2d 157, 162 (6th Cir.1989), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990). We have said that although "ERISA will not preempt state law claims based on wrongs for which ERISA provides no remedies[,] ... where rights are guaranteed by ERISA, the remedy for such rights under ERISA is exclusive. Moreover, Congress constructed ERISA so that the statute will preempt most state law claims." *International Resources v. New York Life Ins.,* 950 F.2d 294, 298 (6th Cir.1991) (citations omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 2941, 119 L.Ed.2d 565 (1992).

> "[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent." ... Where, as here, Congress has expressly included a broadly worded pre-emption provision in a comprehensive statute such as ERISA, our task of discerning congressional intent is considerably simplified.

*Ingersoll–Rand,* 498 U.S. at 137–38, 111 S.Ct. at 482 (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985)). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992). That is exactly what Zuniga seeks here, the payment of benefits under the plan for his treatment of covered patients. Further, ERISA's civil enforcement provision clearly provides this type of remedy. 29 U.S.C. § 1132 (1988 & Supp. V 1993). Although the remedy is not available to Zuniga, that does not mean that no remedy exists. Zuniga's reliance on *Perry* is therefore unavailing.

In *Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. at 483, the court found that a claim for

wrongful discharge was preempted by ERISA because that cause of action would be dependent upon—"relate to"—the existence of an ERISA plan. Similarly, ERISA preempts Zuniga's breach of contract claim, as it necessarily relies on the existence and interpretation of the Chrysler and Ford employee benefit plans. Contrary to the dissent's position, it is rather obvious that in order for Zuniga to prevail on his claim that Blue Cross breached the settlement agreement, the ERISA plans must be read. Under the settlement agreement, Zuniga was reinstated as a preferred provider. When he abused this status, he was removed under the Ford plan, and his application to the Chrysler plan was denied. Zuniga's claim has no basis without these plans. This is not tenuous or remote but obvious; the relief Zuniga seeks is to be reinstated as a preferred provider, which means being paid under the terms of the plans for his treatment of covered patients. "[O]nly those state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted.... [Thus,] virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell*, 944 F.2d at 1276 (citing Sixth Circuit cases recognizing the broad scope of ERISA preemption). We agree with the district court that Zuniga's breach of contract claim necessitates an evaluation of an employee benefit plan, specifically how it selects preferred providers and its assessment of overutilization. Thus, that claim "relates to" an employee benefit plan and is preempted by ERISA.

## V.

For the foregoing reasons, we DISMISS Blue Cross's appeal as non-reviewable by this Court under 28 U.S.C. § 1447(d), and AFFIRM the decision of the district court finding Count I of Zuniga's complaint preempted by ERISA.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

I concur in most of what the court has said, and I agree that the district court's remand order is not reviewable here. I cannot agree, however, that in seeking to recover damages for the alleged breach of his settlement agreement with Blue Cross, Dr. Zuniga "seek[s] to recover benefits from an employee benefit plan"—and although the question is a close one, I do not believe that the doctor's breach of contract claim is preempted by ERISA.

Dr. Zuniga, as the majority opinion notes, is not a "participant" in any ERISA plan maintained by Chrysler or Ford, and neither is he a "beneficiary" of any such plan. See the definitions of those terms at 29 U.S.C. §§ 1002(7) and 1002(8). "Only 'participants' and 'beneficiaries,' as those terms are defined in ERISA, have standing to pursue claims for benefits," *Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947, 951 (6th Cir.1990), *cert. denied*, 498 U.S. 1027, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991), and I do not understand Dr. Zuniga to be asking for something due him under an employee benefit plan.[1] He is certainly not

1. The doctor alleges that he was a "participating physician" with Blue Cross under one of the "Participation Agreements" that Blue Cross has signed with physicians throughout the State of Michigan; that Blue Cross "unjustly 'departicipated' him" some years ago; that on July 28, 1988, after lengthy litigation, he "was allowed to resume his capacity as a participating physician" pursuant to a settlement agreement which provided that he "would be treated on the same basis as any other participating psychiatrist ... and would not be discriminated against in any fashion"; that he was advised in December of 1988 that "he was not placed on the approved list of providers who would be allowed to provide health care services to Chrysler employees in return for payment from [Blue Cross]"; that the reason given was the same one given in the

litigation that had been settled in July, namely "overutilization" or the performance of unnecessary work; and that by "resurrecting the previous allegation that Dr. Zuniga overutilized certain health care procedures as a reason for denial of his application to be an authorized provider for the Chrysler Health–Line program," Blue Cross "breached its agreement with Dr. Zuniga that he would be treated on the same basis as any other physician and would not be discriminated against in any fashion." The wrong allegedly committed by Blue Cross in rejecting the doctor's application to be an authorized provider is thus claimed to arise from a breach of the July settlement agreement, not from a breach of any ERISA plan. The doctor is not asking to be paid under the terms of an ERISA plan, as I understand it, but under the terms of a participation

pursuing a claim for plan benefits on his own account, and—unlike the health care provider in *Cromwell v. Equicor–Equitable H.C.A. Corp.*, 944 F.2d 1272 (6th Cir.1991), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992)—he does not seem to be pursuing a claim for benefits as the assignee of a plan participant or beneficiary. The doctor is simply pursuing a common law claim based on the alleged failure of Blue Cross to honor the contractual commitment it gave him in settling the lawsuit he filed against Blue Cross in 1979, almost a decade before Blue Cross began its present involvement with the Chrysler and Ford ERISA plans.

Although Chrysler and Ford, as sponsors of the plans now administered by Blue Cross, might experience slightly higher costs if Dr. Zuniga were to prevail in his contract claim against Blue Cross, the existence of an economic impact on the plans is not dispositive where the state law has general application and "does not affect the structure, the administration, or the type of benefits provided by an ERISA plan...." *Rebaldo v. Cuomo*, 749 F.2d 133, 139 (2d Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985) (holding that a state statute regulating hospital rates was not preempted). (The Second Circuit abandoned *Rebaldo* in *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 719 (2d Cir.1993), but a unanimous Supreme Court recently reversed *Travelers* in a decision affirming that preemption is not triggered by "common state action" merely because such action has "indirect economic effects on a plan's costs...." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, —— U.S. ——, ——, 115 S.Ct. 1671, 1679, 131 L.Ed.2d 695 (1995).) See also *American Telephone and Telegraph Co. v. Merry*, 592 F.2d 118, 121 (2d Cir.1979), where the garnishment of spousal income under an ERISA plan to enforce alimony and

support orders was likewise held not to be preempted.

The United States Supreme Court cited *Merry* in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983), for the proposition that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." It seems to me that this proposition, which was reiterated in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 389–91, 112 S.Ct. 2031, 2040, 119 L.Ed.2d 157 (1992), and *Travelers*, —— U.S. at —— ——, 115 S.Ct. at 1679–80, governs the instant case; any effect that enforcement of Dr. Zuniga's contract claim against Blue Cross might have on the Chrysler and Ford ERISA plans would be "too tenuous, remote, or peripheral" to warrant preemption.

It is true that ERISA's preemption clause, which provides that the federal statute "shall supersede any and all State laws insofar as they may ... relate to any employee benefit plan described in [29 U.S.C. § 1003(a) and not exempt under § 1003(b) ]," has a broad reach. See, *e.g.*, *Shaw v. Delta Air Lines*, 463 U.S. at 96, 103 S.Ct. at 2899–2900. The clause is not limited to state laws "specifically designed to affect employee benefit plans," *id.* at 98, 103 S.Ct. at 2900, and it extends to state common law, including the law of contract. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). See 29 U.S.C. § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.") [2]

Some common law claims preempted by ERISA are federalized, so to speak, by the civil enforcement provisions of the statute. Among other things, the enforcement provisions allow a participant or beneficiary to

---

agreement to be entered into between him and Blue Cross on the same basis that Blue Cross has entered into such contracts with physicians throughout the State of Michigan.

**2.** Arguably, however, the terms and conditions of the settlement agreement that Blue Cross voluntarily entered into with Dr. Zuniga, being "pri-

vately ordered obligations," should not be regarded as requirements imposed under state law. See *American Airlines, Inc. v. Wolens*, —— U.S. ——, ——, 115 S.Ct. 817, 824, 130 L.Ed.2d 715 (1995), citing *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2608, 2612, 120 L.Ed.2d 407 (1992) (plurality opinion).

bring a federal action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). See *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (holding that a state common law action preempted by ERISA and coming within one of its civil enforcement provisions is removable to federal court under 28 U.S.C. § 1441(b)). But where a common law claim not covered by ERISA's civil enforcement provisions is preempted, preemption means the death of the claim. The particular claim with which we are concerned here, of course, is neither a claim by an ERISA plan participant or beneficiary to recover benefits due him under the terms of his plan nor a claim by such a person to enforce or clarify his rights thereunder. The claim is not covered by 29 U.S.C. § 1132(a)(1)(B) or any of the other civil enforcement provisions of ERISA, so if the preemption clause of ERISA be deemed to apply to it, the claim is necessarily extinguished.

In *Perry v. P\*I\*E Nationwide, Inc.,* 872 F.2d 157, 162 (6th Cir.1989), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990), this court expressed itself as "disposed" toward the reasoning "that preemption should apply to a state law claim only if Congress has provided a remedy for the wrong or wrongs asserted." Although I was a member of the *Perry* panel and did not take issue with the quoted language at the time, I find on reflection that I cannot reconcile this statement with the language of the statute itself. Nonetheless, I fully concur with the suggestion made in *Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc.,* 944 F.2d 752, 755 (10th Cir. 1991), that the lack of alternate remedies in the event of preemption is a factor "deserving of consideration" where the applicability of ERISA's preemption clause is a borderline question.

Three other factors deserving of consideration in this connection have been identified in *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987), where ERISA was held not to preempt a municipal income tax in its application to contributions that ERISA plan participants made to such plans. I shall examine the applicability of each factor in turn.

The first factor is "whether the state law represents a traditional exercise of state authority." *Id.* at 555. This factor obviously cuts in favor of Dr. Zuniga; it is hard to think of a more traditional exercise of state authority than the enforcement of contracts under state common law. And the "starting presumption," when courts address preemption claims, is that "Congress does not intend to supplant state law." *Travelers,* —— U.S. at ——, 115 S.Ct. at 1676.

The second factor is that "courts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan." *Neusser* at 556, quoting *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1467 (5th Cir. 1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987). This factor favors Dr. Zuniga too; he is obviously an "outside party," and only his contractual relationship with Blue Cross, the plan administrator, is at issue.

The third factor "concerns the incidental nature of any possible effect of the state law on an ERISA plan." *Neusser, id.* To the extent that it does not simply beg the question that is to be answered, it seems to me that this factor too favors Dr. Zuniga. Holding Blue Cross to its contract with Dr. Zuniga would not have more than an incidental effect on the Chrysler and Ford plans.

In this respect, I believe, the case at bar bears more than a passing resemblance to *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). There the question was whether ERISA's preemption clause precluded judgment creditors of participants in employee welfare plans from invoking general state garnishment laws to collect judgments against the plan participants. Notwithstand-

ing that plan trustees necessarily became parties to the garnishment proceedings and had to deposit with the court funds that would otherwise have been paid to the plan beneficiaries, and notwithstanding a contention that "benefit plans subjected to garnishment will incur substantial administrative burdens and costs," *id.* at 831, 108 S.Ct. at 2186, the Supreme Court held that "ERISA does not forbid garnishment of an ERISA welfare benefit plan, even where the purpose is to collect judgments against plan participants." *Id.* at 841, 108 S.Ct. at 2191.

The Supreme Court did not repudiate this holding in *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), where ERISA was held to preempt a wrongful discharge action premised on a claim that the employee had been fired in order to prevent him from obtaining benefits under an ERISA plan sponsored by the employer. The *Ingersoll–Rand* Court cited *Mackey* with evident approval, noting that "[t]he fact that collection might burden the administration of a plan did not, by itself, compel pre-emption." *Id.* at 139, 111 S.Ct. at 483. And the Court followed *Mackey* in *Travelers,* —— U.S. at ——–——, 115 S.Ct. at 1680–81.

The dispositive consideration in *Ingersoll–Rand* was that "the existence of a pension plan [was] a critical factor in establishing liability under the State's wrongful discharge law." *Id.* at 139–40, 111 S.Ct. at 483. Because the employer was alleged to have discharged the plaintiff precisely on account of a desire to avoid contributing to, or paying benefits under, the ERISA plan, "there simply is no cause of action if there is no plan." *Id.* at 140, 111 S.Ct. at 484.

In the instant case, by contrast, the agreement that Dr. Zuniga seeks to enforce settled a lawsuit commenced long before Blue Cross became involved with the Chrysler and Ford plans. Dr. Zuniga's cause of action against Blue Cross would exist even if the doctor's patients purchased coverage from Blue Cross directly and were not participants in any ERISA plan. The existence of the ERISA plans is incidental here, as it was not in *Ingersoll–Rand.*

At bottom, *Ingersoll–Rand* teaches, "the question whether a certain state action is pre-empted by federal law is one of Congressional intent. The purpose of Congress is the ultimate touchstone." *Id.* at 137–38, 111 S.Ct. at 482, internal quotes and citations omitted. Congress intended to preempt the regulation of employee benefit plans, see *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. at 46, 107 S.Ct. at 1552, recognizing that "[a] patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them." *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). ERISA itself describes the purpose of the act as being

"to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

The text of ERISA's preemption clause is "clearly expansive," *Travelers,* —— U.S. at ——, 115 S.Ct. at 1677, but the clause is not to be applied in such a way as to "read the presumption against pre-emption out of the law...." *Id.* "[I]nfinite relations cannot be the measure of pre-emption," the Supreme Court has now told us, and "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.*

As we have seen, and as *Travelers* confirms, "[t]he basic thrust of the pre-emption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." —— U.S. at ——–——, 115 S.Ct. at 1677–78. Enforcement of Dr. Zuniga's settlement agreement with Blue Cross would not,

in my view, subject ERISA plans to a "multiplicity of regulation," and I am not persuaded that Congress intended to preempt state contract law in its application to this agreement. Insofar as my colleagues on the panel have reached a different conclusion, I respectfully dissent.