IMMEDIATE PHARMACEUTICAL SERVICES, INC., Appellant,

v.

SUPERIOR METAL PRODUCTS, INC. EMPLOYEE
BENEFITS TRUST, Appellee.

[Cite as *Immediate Pharmaceutical Serv., Inc. v. Superior Metal Products* (1999), 134 Ohio App.3d 748.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–99–40.

Decided Sept. 15, 1999.

*Thompson, Hine & Flory, L.L.P., Michael J. Holleran* and *Brian T. Johnson,* for appellant.

*Schottenstein, Zox & Dunn, James E. Davidson* and *Daniel W. Srsic,* for appellee.

SHAW, Judge.

Immediate Pharmaceutical Services, Inc. ("IPS") appeals the judgment of the Court of Common Pleas of Allen County, granting a motion to dismiss filed by Superior Metal Products, Inc. Employee Benefits Trust ("Superior Trust").

Superior Metal Products, Inc. ("Superior Metal") is a manufacturing company located in Lima, Ohio. As a means of providing health benefits to its employees, Superior Metal established a benefits trust, defendant Superior Trust. Defendant provides benefits pursuant to a Benefits Trust Plan Document ("Superior Plan"), which is in turn governed by the provisions of the federal Employee Income Retirement Security Act ("ERISA").

In order to provide a prescription drug benefit to Superior Plan participants, defendant entered into a contract with plaintiff IPS. The contract stated that plaintiff IPS would be the "exclusive provider of prescription drugs to [defendant's] Eligible Participants in the geographic area" and defined "eligible participants" as follows:

"The term 'Eligible Participants' shall mean all individuals and their dependents identified by [defendant Superior Trust] as eligible on an electronic tape or hard copy listing in [plaintiff IPS] Compatible Format."

David Kuehl was employed by Superior Metal between May 1987 and June 1994, when his hemophiliac condition forced him to stop working. However,

Kuehl's right to receive benefits under the Superior Plan continued until the date that he became eligible for Medicare. It is apparently undisputed that Kuehl became eligible for Medicare in November of 1996.

In March 1997, Kuehl underwent knee replacement surgery. Due to his condition, he required an extremely expensive blood clotting agent called Hexilate. Plaintiff IPS alleges that it examined the "electronic tape or hard copy listing" in its possession, which identified Kuehl as an eligible participant under the contract. Plaintiff therefore filled the Hexilate prescription and billed defendant Superior Trust pursuant to the contract. However, defendant refused to reimburse plaintiff for the prescription, based on its conclusion that Kuehl was no longer eligible for prescription drug benefits under the Superior Plan.

On November 19, 1997, plaintiff IPS filed this lawsuit, alleging that defendant Superior Trust had breached the contract. On February 19, 1999, defendant filed a motion to dismiss the lawsuit and/or motion for judgment on the pleadings, arguing that the suit was preempted under Section 1144(a), Title 29, U.S.Code the ERISA preemption statute. On March 30, 1999, the trial court filed a judgment entry sustaining defendant's motion and dismissing the complaint. Plaintiff now appeals that judgment and asserts five assignments of error with the trial court's decision:

"The trial court erred in ruling that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ('ERISA') applies to the breach of contract claim of plaintiff-appellant Immediate Pharmaceutical Services, Inc. ('IPS')."

"The trial court erred in ruling that it did not have subject matter jurisdiction over the claims of IPS."

"The trial court erred in ruling that defendant-appellee Superior Metal Products Employee Benefits Trust ('Superior') did not waive its right to assert an ERISA preemption affirmative defense."

"The trial court erred in ruling that ERISA preempts IPS's breach of contract claims."

"The trial court erred in dismissing IPS's complaint and/or granting Superior judgment on the pleadings on the basis of ERISA preemption."

■ Essentially, plaintiff argues that the trial court's determination that ERISA preempts its state-law contract claim is erroneous. As plaintiff's five assigned errors raise similar issues for our review, we will address them together.

Whether a state cause of action is preempted under ERISA is a multi-faceted and fact-intensive inquiry that is not easily reduced to a single test. However, the Eighth District's opinion in *Halley v. Ohio Co.* (1995), 107 Ohio App.3d 518, 522–523, 669 N.E.2d 70, 73, correctly summarizes the legal principles relevant to this case:

"ERISA preempts state laws that 'relate to any employee benefit plan.' 'Relate to' is interpreted broadly, such that a state-law cause of action is preempted if it has a connection with or reference to an employee benefit plan. However, state actions that affect an employee benefit plan only in a remote or peripheral manner are not preempted by ERISA.

"While there is no simple test for determining whether a state law 'relates to' a plan, the courts have established some guiding principles. * * * ERISA will generally preempt state law * * * when state-law and common-law claims are for the recovery of an ERISA plan benefit[.]

"[However, the] following factors indicate that a state law is merely peripheral to a pension plan: (1) The law involves an area of traditional state regulation; (2) The state law does not affect relations among the ERISA entities, i.e., the employer, the plan, the plan fiduciaries and/or the beneficiaries; and (3) The effect of the state law on the plan is incidental in nature." (Citations omitted.)

Application of the foregoing principles to this case leads to the conclusion that ERISA does not preempt this lawsuit. First, we reject defendant's claim that the plaintiff has presented a claim for "benefits" as that term is used in the statute. Rather, plaintiff has presented a "run-of-the-mill state-law claim[ ] * * * for failure to pay creditors." *Mackey v. Lanier Collection Agency & Serv.* (1988), 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836, 846. Although *Mackey* was a five-to-four split judgment, the court was apparently unanimous in the opinion that ERISA does not preempt all contract claims against benefits plans. Compare *id.* at 833, 108 S.Ct. at 2187, 100 L.Ed.2d at 846 with *id.* at 843–844, 108 S.Ct. at 2192–2193, 100 L.Ed.2d at 852–853 (Kennedy, J., dissenting).

Defendant argues that in this case that payment of its contract obligation to plaintiff is "in essence" a payment of benefits, since it would be reimbursement for conveyance of a "benefit which [Kuehl] is not entitled to receive under the terms of the Plan." In support of this claim, defendant cites *Cromwell v. Equicor–Equitable HCA Corp.* (C.A.6, 1991), 944 F.2d 1272. However, in *Cromwell,* the plaintiff health care provider's right to recovery was premised solely on an assignment of plan benefit to the provider from an alleged plan beneficiary, and the trial court determined that the provider "procured an assignment of benefits [from the alleged beneficiary] without ensuring that it conveyed any right to benefits under the plan." *Cromwell,* 944 F.2d at 1276, fn. 3. Thus, in *Cromwell* the trial court would have been required to determine whether the assignor beneficiary was entitled to benefits *under the ERISA plan* in order to establish plaintiff's right to recovery.[1] By contrast, in this case the plaintiff's right to

---

1. The *Cromwell* opinion itself observed that a different factual situation would affect its conclusion:

payment and damages arises solely from its contract with defendant. The contract requires defendant to pay the plaintiff for prescriptions dispensed to "Eligible Participant[s]" *as defined by the contract,* not by the ERISA Plan. Therefore, whether Kuehl is a proper beneficiary under the Superior Plan has no effect on the rights and obligations contained in the contract, and no reference to the Superior Plan is necessary. Indeed, the terms of the Superior Plan would appear to be improper parol evidence of terms antecedent to the written contract. See, *e.g., Ed Schory & Sons, Inc. v. Society Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, 1080.

Moreover, it is clear that third-party contracts such as the one at issue in this case are traditionally within the realm of state-law control. Cf. R.C. Chapter 1302.

■ "ERISA gives plans the ability to sue and be sued in their own right. [ERISA plans] may conduct business * * * under state law as other entities not created by ERISA. When an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law." (Citations omitted.) *Smith v. Provident Bank* (C.A.6, 1999), 170 F.3d 609, 617. Essentially, plaintiff and defendant entered in a traditional, state-governed sales contract of which Kuehl was a third-party beneficiary. In this factual situation, the ERISA plan controls only obligations and benefits between the defendant and Kuehl, not the defendant and the plaintiff. As such, this lawsuit does not directly affect relations between the traditional ERISA entities: the employer, the plan, the plan fiduciaries and/or the beneficiaries. See, *e.g., Firestone Tire & Rubber Co. v. Neusser* (C.A.6, 1987), 810 F.2d 550, 556, cited in *Halley,* 107 Ohio App.3d at 522–523, 669 N.E.2d at 73–74.

" '[T]he courts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—*than if it affects relations between one of these entities and an outside party,* or between two outside parties with only an incidental effect on the plan.' " (Emphasis added.) *Fire-*

---

"[A]ppellants agreed to provide health care services to the [alleged plan beneficiary] without requiring proof of insurance or other adequate security. Appellants did not ask to be notified if coverage lapsed, nor did they investigate what circumstances might cause coverage to lapse or whether there was any limit on coverage. They procured an assignment of benefits without ensuring that it conveyed any right to benefits under the plan. *In the absence of any legal duty between [the plan administrator], the * * * plan and appellants, ERISA negates appellants' attempt to make * * * the plan an after-the-fact insurer of the [alleged beneficiary's] private debt.*" (Emphasis added.) *Cromwell,* 944 F.2d at 1276, fn. 3.

Here, the independent contract between the plaintiff and the defendant provides the "legal duty" missing in *Cromwell,* therefore making that case both legally and factually distinguishable.

*stone,* 810 F.2d at 556, quoting *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Ent.* (C.A.5, 1986), 793 F.2d 1456, 1467.

In addition, we can only conclude that the state contract law sought to be enforced by the plaintiff has only an incidental effect upon the plan. State law clearly governs contracts, and we agree with the plaintiff's contention that preemption in this case "would grant ERISA plans immunity from their creditors, and enable such plans to unilaterally abrogate their written contracts." At this stage of the litigation, there does not appear to be any dispute that Kuehl was an "eligible participant" as defined by the contract:

"The term 'Eligible Participants' shall mean all individuals and their dependents identified by [defendant] as eligible on an electronic tape or hard copy listing in [plaintiff] Compatible Format."

There is no "reference to" or "connection with" the Superior Plan in this contract language. Cf. *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490; *Zuniga v. Blue Cross & Blue Shield of Michigan* (C.A.6, 1995), 52 F.3d 1395, 1401. By its plain language, the clause places a burden upon the defendant to "identif[y]" participants to the plaintiff. Contrary to the argument of the defendant, the contract does not require plaintiff, or the court, to examine the terms of the Superior Plan to determine whether a participant is "eligible," nor does it affect administration of the Superior Plan in any way:

"A change in the eligibility status of an individual shall be effective on the second business day after the day on which [plaintiff] received the change if the information is furnished on an electronic tape in [plaintiff] Compatible Format or if furnished in hard copy, on the fourth business day after the day on which [plaintiff] received the change. *Until a change is effective,* [plaintiff] *shall be entitled to reimbursement for dispensed prescriptions.*" (Emphasis added.)

Finally, we observe that preemption in this case fails to achieve any of the objectives Congress sought to address by enacting ERISA. In *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* (1995), 514 U.S. 645, 656–657, 115 S.Ct. 1671, 1677–1678, 131 L.Ed.2d 695, 706 ("*New York Blues*"), the Supreme Court discussed the intention of Congress in enacting ERISA, and concluded:

" '[The objective of ERISA was] to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government * * *.'

"*The basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of*

*employee benefit plans."* (Emphasis added.) *Id.*, quoting *Ingersoll–Rand Co. v. McClendon* (1990), 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474, 486.

We fail to see how preemption would advance any of the congressional concerns that the Supreme Court identified in *New York Blues.* Moreover, if we were to adopt defendant's position, a benefits plan's contracts with a third party would always be subject to variance by interpretation of the plan's terms. That result is against the best interests of ERISA plans themselves, since non-ERISA entities would be unlikely to enter into contracts with ERISA plans that could be voided or changed at the plan's option.

For the foregoing reasons, plaintiff's first, second, fourth, and fifth assignments of error are sustained. Plaintiff's third assignment of error is overruled as moot pursuant to App.R. 12(A)(1)(c). The judgment of the trial court is reversed, and the cause is remanded to the Court of Common Pleas of Allen County for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

THOMAS F. BRYANT, P.J., and HADLEY, J., concur.