DECISION.
{¶ 1} In this insurance-refund quarrel, plaintiff-appellant, Joseph Gromada, sued to force defendants-appellees, David Barrere and Obstetrics and Gynecology Group, Inc. ("the corporation"), to disgorge insurance-premium refunds paid by Gromada. Gromada appeals the trial court's dismissal of the case in favor of the corporation.
 {¶ 2} After Gromada filed suit, the corporation moved to dismiss under Civ.R. 12(B)(1) and 12(B)(6). The trial court dismissed the case without prejudice for lack of subject-matter jurisdiction under Civ.R. 12(B)(1). The court ruled that the resolution of the suit required determinations related to the Employee Retirement and Income Security Act of 1974 ("ERISA"). Because ERISA preempts state-law claims that relate to any employee benefit plan, the court held that it lacked jurisdiction.
 {¶ 3} We conclude that the primary issue in this case is the interpretation of the buy-sell agreement between the corporation and Gromada. Because that agreement is governed by state law and is unrelated to ERISA, we reverse and remand.
 I. Gromada Personally Pays the Premium {¶ 4} Gromada owned a medical practice specializing in obstetrics and gynecology. The practice was incorporated as Plunkett Thompson Gromada Trent, M.D., Inc. ("Plunkett"), and was the predecessor to the corporation. In May 1993, during his tenure as owner, Gromada purchased a group disability insurance policy from the Standard Insurance Company ("the Insurance Company"). The policy benefited both Gromada and other employees of the corporation. Gromada personally paid the premium using after-tax dollars deducted from his salary. The deductions were then issued to the corporation for transmittal to the Insurance Company. The corporation did not regard the insurance premium as an expense. But the application for the group insurance stated that "[t]he employer pays the total premium." The application did not discuss or mention the monetary source of the premium.
 {¶ 5} About two months later, the Insurance Company issued a policy establishing a long-term disability plan. In that policy, the corporation was listed as both the plan sponsor and the plan administrator. The policy itself stated that it was subject to ERISA, and that the insurance provided by the corporation on behalf of its employees and shareholders would be "noncontributory." As defined by the policy, "noncontributory" meant "the policyowner or [e]mployer pays the entire premium for [the] insurance." Thus, both the application for insurance and the policy indicated that all premiums were to be paid by the corporation.
 II. Gromada Sells His Shares {¶ 6} In late October 2002, Gromada agreed to sell all his shares of stock to Barrere. The agreement between Gromada and Barrere provided that Gromada would resign his position of employment with the corporation and would transfer and assign all his stock in the corporation to Barrere. The agreement became effective January 1, 2002. A little over a year later, in February 2003, the Insurance Company refunded $17,760 of Gromada's premium to the corporation. The monies refunded represented excess premiums paid by Gromada. When Gromada learned that the Insurance Company had reimbursed the premiums, he demanded that the corporation transfer the refund to him as its true and rightful owner. But the corporation and Barrere kept the entire refund.
 {¶ 7} The terms of the buy-sell agreement provided that Gromada "ha[d] received all amounts due him from the corporation, whether as an employee, officer, shareholder, or otherwise." Gromada now argues that because he did not know of the refund at the time of the agreement, he could not have agreed that the refund would belong to the corporation.
 {¶ 8} On appeal, Gromada assigns three errors: (1) the trial court erred in dismissing Gromada's claims for lack of jurisdiction; (2) the trial court incorrectly concluded that this case implicated factual findings involving the terms of the policy and determinations related to the application of ERISA; and (3) the lower court incorrectly left Gromada without any state or federal remedy. Because Gromada's three assignments of error raise similar issues, we address them together.
 {¶ 9} Appellate courts review de novo a trial court's grant of a motion to dismiss under Civ.R. 12(B)(1).[1] Thus, we must decide whether Gromada's complaint alleged any cause of action that the trial court had authority to decide.[2]
 III. Federal Preemption of State Claims {¶ 10} Gromada argues that the court below erroneously dismissed his claims for lack of jurisdiction based upon the trial court's conclusion that the case involved findings of fact related to the application of ERISA. We agree.
 {¶ 11} ERISA preempts state-law claims that "relate to" any employee benefit plan.[3] "Relate to" is interpreted broadly to mean that a state-law cause of action is preempted if it has a connection with or reference to an employee benefit plan.[4] But if the state action affects the benefit plan only peripherally or remotely, then ERISA preemption does not apply.[5]
 {¶ 12} The Supreme Court has recognized that the Congressional intent of ERISA preemption is to "ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government."[6]
Thus, the primary purpose of preemption is to "avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."[7]
 {¶ 13} Typically, ERISA preempts state law when (1) the state law is specifically designed to affect employee benefits; (2) the state-law and common-law claims are for the recovery of an ERISA plan benefit; (3) ERISA provides a specific remedy; and (4) state laws and common-law claims provide remedies for misconduct growing out of ERISA plan administration.[8]
 {¶ 14} Conversely, the following factors suggest "that a state law is merely peripheral to a pension plan: (1) the law involves an area of traditional state regulation; (2) the state law does not affect relations among the ERISA entities, i.e., the employer, the plan, the plan fiduciaries and/or the beneficiaries; (3) the effect of the state law on the plan is incidental in nature."[9]
 {¶ 15} Applying these principles to Gromada's facts, we hold that ERISA did not preempt this lawsuit. State laws that affect the administration of the plans are preempted, but state laws that merely affect the ultimate ownership of the distributed benefits are not.[10]
 {¶ 16} The corporation essentially argues that the gravamen of Gromada's grievance "relates to" the funding, oversight, and administration of the policy. But all alliterations aside, Gromada did not dispute the action of the Insurance Company in returning the money to the corporation. Nor did Gromada claim that the corporation had breached fiduciary duties as the plan administrator.
 {¶ 17} Rather, Gromada's rights accrued under agreements and arrangements between the corporation and Gromada at the time of Gromada's ownership. Moreover, whatever rights Gromada had to the refund arose by virtue of his ownership and subsequent sale of the corporation. Those rights were enumerated in the buy-sell agreement, not in the insurance policy or in ERISA.
 {¶ 18} Even the corporation's refusal of Dr. Gromada's claims was based on Ohio law. The corporation also relied heavily on the agreement between it and Gromada, claiming that the buy-sell agreement extinguished Gromada's claims against it. These types of internal disputes typically fall under the purview of state law — and this case is no exception.
 {¶ 19} Gromada did not dispute whether the corporation was the rightful beneficiary of the refund. Instead, he claimed a constructive trust arose after the insurance company turned over the money to the corporation as plan sponsor and employer.
 {¶ 20} Recently, the United States Court of Appeals for the Ninth Circuit held that ERISA did not preempt state law when there was a dispute over the proper beneficiary of a deceased participant's 401k plan benefits.[11] The court held that the state-law doctrine of substantial compliance did not affect the administration of the plan but merely aided in determining the proper recipient of the proceeds.[12]
 {¶ 21} Similarly, we are convinced that the issue in this case — Gromada's right to a refund based on the buy-sell agreement between Gromada and the corporation — was not related to the administration of the insurance plan. It was a determination of the proper recipient of the proceeds. And the interpretation of the buy-sell agreement necessarily involved an area traditionally regulated by state common law. This weighed against ERISA preemption.
 {¶ 22} Further, the state law in this case did not directly affect relations among ERISA entities. Courts are more inclined to find that a state law relates to the benefit plan where the law "affects relations among the principal ERISA entities — the employer, the plan, the plan fiduciaries, and the beneficiaries — than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan."[13]
 {¶ 23} Here Gromada was not accusing the Insurance Company of misconduct or breach of the insurance policy. Nor was Gromada suing the corporation in its capacity as plan administrator. Conversely, this case involved an internal dispute between corporate executives in their corporate capacities.
 {¶ 24} Essentially, Gromada and Barrere entered into a buy-sell agreement that was governed by state law. The buy-sell agreement governed relationships between Gromada and the corporation. Because this case involved state-law claims based on the buy-sell agreement, the effect of the state law on the plan was incidental in nature. And because there were no issues concerning the terms of the insurance policy or any provision of ERISA, the trial court erred in holding that this case involved factual issues concerning the terms of the policy and determinations related to the application of the ERISA statute.
 {¶ 25} We conclude that Gromada's claims only remotely or peripherally affect the employee benefit plan. This conclusion does not conflict with the Congressional goals of ERISA preemption. For the reasons mentioned, the trial court erred in dismissing Gromada's complaint for lack of subject-matter jurisdiction. Therefore, we sustain the assignments of error, reverse the trial court's judgment, and remand this case for further proceedings.
Judgment reversed and cause remanded.
Gorman, P.J., and Sundermann, J., concur.
[1] See Thomas v. O'Connor (Mar. 22, 2000), 9th Dist. No. 19538.
[2] See Avco Financial Services Loan, Inc. v. Hale (1987),36 Ohio App.3d 65, 67, 520 N.E.2d 1378.
[3] See Section 1144(a), Title 29, U.S.Code; see, also, Halleyv. Ohio Co. (1995), 107 Ohio App.3d 518, 522, 669 N.E.2d 70.
[4] See Halley v. Ohio Co., supra.
[5] Id.
[6] See New York State Conference of Blue Cross Blue Shield Plansv. Travelers Ins. Co. (1995), 514 U.S. 645, 656, 115 S.Ct. 1671, quotingIngersoll-Rand Co. v. McClendon (1990), 498 U.S. 133, 142,111 S.Ct. 478.
[7] See New York State Conference of Blue Cross Blue ShieldPlans v. Travelers Ins. Co., supra, at 657.
[8] See Halley v. Ohio Co., supra.
[9] Id. at 522-523.
[10] See Central States v. Howell (C.A.6, 2000) 227 F.3d 672, 679.
[11] See BankAmerica Pension Plan v. McMath (C.A.9, 2000), 206 F.3d 821,830.
[12] Id.
[13] Immediate Pharmaceutical Services, Inc. v. Superior MetalProducts, Inc., 134 Ohio App.3d 748, 753, 1999-Ohio-871,732 N.E.2d 417.