Jane L. SMITH, Executrix of the Estate of Robert Louis Stauter; Emergency Professional Services, Inc., Employees' Profit Sharing Trust and Plan; Emergency Professional Services, Inc., Employees' Money Purchase Pension Trust and Plan, Plaintiffs–Appellants,

v.

PROVIDENT BANK; Cowen & Company; Ray Rossman, Sr.; Ray Rossman, Jr.; James Cambron; Star Bank; Catholic Diocese of Cleveland; John Doe I—III, Defendants–Appellees.

No. 97–4151.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 28, 1998.

Decided March 18, 1999.

Arthur M. Kaufman (briefed), Hahn, Loeser & Parks, Cleveland, OH, for Cowen & Company.

Timothy L. McGarry (briefed), Jeffrey L. Nischwitz (argued and briefed), Nischwitz, Pembridge & Chriszt Co., Cleveland, OH, for Ray Rossman, Sr and Ray Rossman, Jr.

Deborah S. Brenneman (briefed), Thompson, Hine & Flory, Cincinnati, OH, Timothy L. McGarry, Jeffrey L. Nischwitz, Nischwitz, Pembridge & Chriszt Co., Cleveland, OH, for Star Bank.

Edward J. Maher (briefed), Edward J. Maher Co., Cleveland, OH, Deborah S. Brenneman, Thompson, Hine & Flory, Cincinnati, OH, for Catholic Diocese of Cleveland.

Before: GUY, DAUGHTREY, and MOORE, Circuit Judges.

MOORE, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. GUY, J. (p. 617), delivered a separate opinion concurring in part and dissenting in part.

MOORE, Circuit Judge.

The plaintiffs in this case filed an ERISA action in federal court and two years later filed an action in state court making essentially the same allegations but seeking relief under state law. The latter case was removed and consolidated with the original federal suit, and the district court dismissed or granted summary judgment on all of the state-law claims, holding that they were preempted by ERISA. The parties then settled the ERISA claims, and the district court entered a consent judgment subject to the plaintiffs' reservation of their right to appeal the rulings on their state-law claims. We **AFFIRM** the district court's holding that plaintiff Stauter's claims are preempted but **REVERSE** with respect to some of the claims asserted by the other plaintiffs. We therefore **REMAND** this case for further proceedings.

## I. BACKGROUND

The plaintiffs are Robert Stauter[1] and two benefits plans in which he participates as an

Martin F. White (argued and briefed), James J. Crisan (briefed), Warren, OH, for Plaintiffs–Appellants.

Deborah DeLong (briefed), Thompson, Hine & Flory, Cincinnati, OH, for Provident Bank and James Cambron.

1. While this appeal was pending, Stauter died.

His claims are now pursued by his estate. For

employee of Emergency Professional Services, Inc. ("EPS"). The Plans—the EPS Employees' Profit Sharing Trust and Plan and the EPS Employees' Money Purchase Pension Trust and Plan—are governed by ERISA. Through the plans, Stauter has an account that was managed by Provident Bank as trustee. On October 11, 1990, Stauter instructed Provident to purchase 1,000 shares of stock in Ameritrust Bank for his account. The purchase was executed by Cowen & Company for a price of $10,870, including the cost of the shares and a commission.

As of the close of business on April 30, 1991, Provident was removed as trustee for the Plans and was replaced by Society Bank. Provident transferred the assets held in Stauter's account to Society on or about June 7, 1991. Stauter later discovered, among several other errors, that the Ameritrust shares were missing from his account. In lieu of the shares, Provident had transferred $10,550 (the purchase price less dividends Stauter had received), even though by mid-May the value of the shares had risen to more than $16,000.

Stauter then embarked on a long and frustrating campaign to have this error acknowledged and corrected. While Provident eventually recognized its error, there then arose a dispute over the proper compensation, as the value of the shares continued to rise steadily. Eventually in 1993, Stauter and the Plans filed suit in federal court against Provident, Cowen, and unknown "John Does." The complaint alleged that Provident had breached its fiduciary duty as the trustee of an ERISA plan, sought to clarify Stauter's rights and recover benefits due under an ERISA plan, asserted common law claims against Cowen for breach of fiduciary duty and negligence, and asserted common law claims against all defendants for conversion.

In the course of discovery, the plaintiffs learned the following additional information. On the same day that Stauter had instructed

Provident to purchase 1,000 shares of Ameritrust stock for his account, the Catholic Diocese of Cleveland issued an identical instruction for its account. Provident and Cowen, however, executed only Stauter's request. When the Diocese's account was later transferred to Star Bank, officials there noticed that the shares were missing. Provident "corrected" this error by taking the shares out of Stauter's account and giving them to Star in exchange for $10,870. It then credited Stauter's account for $10,550, the amount he had paid for the shares less dividends that he had received since the purchase date. Provident performed this "correction" on May 13, 1991, after it had been removed as trustee for Stauter's Plans.

Armed with this new information, the plaintiffs filed suit in 1995 in state court, alleging state statutory and common law claims against the defendants.[2] The defendants removed. The district court held that it had removal jurisdiction by virtue of ERISA preemption and consolidated the new case with the 1993 case already in federal court. It then dismissed or granted summary judgment on the state-law claims asserted in both complaints and struck the plaintiffs' demand for a jury trial and their request for punitive and extra-contractual damages. The court, however, denied Provident's motion for summary judgment on the ERISA claims. The parties then agreed to the entry of a consent judgment in favor of the plaintiffs against Provident, in which the plaintiffs reserved their right to appeal the ruling that their state-law claims are preempted.

We hold that Stauter's fiduciary duty claim against Provident is entirely displaced by 29 U.S.C. § 1132. We conclude that removal was therefore proper and gave the district court supplemental jurisdiction over the other claims. See 28 U.S.C. §§ 1367, 1441(a). We also affirm the district court's holding that ERISA preempts Stauter's claims under Ohio statutory and common law. See 29 U.S.C. § 1144(a). Although ERISA also

---

convenience, we continue to refer to him as a plaintiff.

**2.** In addition to Provident and Cowen, who were named as defendants in the 1993 suit in federal

court, the 1995 suit in state court named James Cambron, a Provident employee; Star Bank; Star employees Ray Rossman, Sr., and Ray Rossman, Jr.; and the Catholic Diocese.

preempts the fiduciary duty claims brought by the Plans, ERISA does not preempt the Plans' claims against parties who were not ERISA fiduciaries. We therefore reverse the district court's decision in some respects and remand for proceedings consistent with this opinion.

## II. CLAIMS BROUGHT BY STAUTER

### A. BREACH OF FIDUCIARY DUTY

■ Common law breach of fiduciary duty claims are clearly preempted by ERISA. *See Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157, 161 (6th Cir.1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990). Stauter argues that his claim is not preempted because Provident was no longer an ERISA fiduciary when it wrongly removed the shares from his account. This argument fails for two reasons.

■ First, it is the nature of the claim—breach of fiduciary duty—that determines whether ERISA applies, not whether the claim will succeed. *See Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 943 (6th Cir. 1995). In enacting ERISA and broadly preempting state law, Congress intended to standardize the administration of employee benefit plans, including the duties and liabilities of fiduciaries. It is not a valid argument against preemption to say that the state seeks to impose greater obligations than Congress did.

■ Second, Provident was an ERISA fiduciary as long as it exercised control over plan assets. Stauter argues that as of May 1, 1991, Provident retained no discretionary authority over the plan and was charged only with the "ministerial" task of transferring the assets to Society. However, the definition of a fiduciary under ERISA is a functional one, is intended to be broader than the common law definition, and does not turn on formal designations such as who is the trustee. *See Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir.1988) (describing breadth of fiduciary status under ERISA); *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 418 n. 3 (4th Cir.1993) (stating that ERISA definition of fiduciary is "broader than the common law concept of a trustee"). It includes anyone who "exercises any discretionary authority or discretionary control respecting management of [the] plan or exercises *any authority or control* respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i) (emphasis added). Because Provident controlled Plan assets, it is liable under ERISA as a fiduciary. *See Blatt v. Marshall & Lassman*, 812 F.2d 810, 813 (2d Cir.1987); *see also Hendershott*, 840 F.2d at 342.

■ The fiduciary duty claims against Cowen—the brokerage company that handled the stock purchase—and Cambron—the Provident employee who managed Stauter's account—are preempted for the same reasons. To the extent that Provident delegated duties and powers to Cowen and Cambron, they personally could become ERISA fiduciaries and be liable under § 1132(a)(2). *See Donovan v. Mercer*, 747 F.2d 304, 309 (5th Cir.1984). If Cowen and Cambron do not meet ERISA's definition of a fiduciary, neither can be liable for breach of fiduciary duty with respect to management of an ERISA plan.

■ While the fiduciary duty claims asserted in the 1995 complaint are preempted, the mere availability of a federal preemption defense to a state-law claim does not, in general, confer federal subject-matter jurisdiction. The Supreme Court has held that in the special context of claims to recover ERISA benefits under § 1132(a)(1)(B), purported state-law claims are not only preempted by ERISA but entirely displaced, such that federal courts have subject-matter jurisdiction despite the well-pleaded complaint rule. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Neither the Supreme Court nor this court has expressly extended this complete preemption doctrine to claims for breach of fiduciary duty, which fall under § 1132(a)(2), not § 1132(a)(1)(B). However, we see little reason to distinguish between the two provisions. ERISA is at least as concerned with defining and standardizing the duties of a fiduciary as it is with providing for recovery of benefits. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–53, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (describ-

ing obligations ERISA imposes on fiduciaries). A claim for breach of fiduciary duty against the fiduciary of an ERISA plan necessarily presents a federal question. Thus, Stauter's state-law fiduciary duty claim is not only preempted but also provides federal subject-matter jurisdiction. *See Kramer v. Smith Barney*, 80 F.3d 1080, 1083–84 (5th Cir.1996) (holding that fiduciary duty claim can be removed on the basis of ERISA preemption). Because the other claims asserted in the 1995 action arise out of the same case or controversy and therefore fall within our supplemental jurisdiction, removal of the entire case was proper. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related ... that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."); 28 U.S.C. § 1441(c) (providing for removal of entire case when one claim presents a federal question).

## B. RECOVERY OF BENEFITS

Stauter's second claim in the 1995 complaint is for "recovery of benefits and damages." This claim is brought under OHIO REV.CODE ANN. § 1308.30 (Banks–Baldwin West 1994 & Supp.1998), which permits a plaintiff to recover wrongfully transferred securities and obtain damages. This claim is essentially identical to Stauter's 1993 claim to recover benefits due under an ERISA plan. The only difference is that the 1995 complaint characterizes the claim as a state-law action.

█ Despite having filed and never having sought to dismiss an ERISA claim to recover benefits, Stauter argues that this claim is not preempted because he seeks to recover certain shares of stock, not "benefits." He states, "Whether those shares would ever be converted into a 'benefit' is the subject of speculation." Appellants' Br. at 25. This statement seems to refer to whether Stauter actually received the assets in his account, which are now held by Society Bank for his

benefit. The assets are, however, indisputably the assets of an ERISA plan. Section 1132(a)(1)(B) allows Stauter to sue "to clarify his rights to future benefits under the terms of the plan," which includes clarifying the amount that will be due to him if and when he becomes entitled to withdraw the money. The case before us is clearly such a suit.

█ Stauter also argues that even if § 1308.30 would otherwise be preempted by ERISA, it is "saved" by 29 U.S.C. § 1144(b)(2)(B), which provides: "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." He points out that § 1308.30 appears in the chapter of the Ohio code dealing with investment securities. It creates a cause of action available to "[a]ny person against whom the transfer of a security is wrongful for any reason" and provides for damages as well as for recovery of the securities. OHIO REV.CODE ANN. § 1308.30.

Most cases interpreting ERISA's "saving clause" have arisen in the context of insurance rather than banking or securities. In that context the Supreme Court laid out the criteria for applying the saving clause in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987):

First, we [take] what guidance [is] available from a "common-sense view" of the language of the saving clause itself.... Second, we [make] use of the case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act.... [That case law establishes three criteria:] "[F]irst whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry."

*Pilot Life*, 481 U.S. at 48–49, 107 S.Ct. 1549 (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), and quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)). The

"common-sense view" is that, in order to be saved, a law must be "specifically directed" towards the insurance industry. *Pilot Life,* 481 U.S. at 50, 107 S.Ct. 1549. While the McCarran–Ferguson criteria are not directly applicable in the securities context, we are guided in our interpretation of the saving clause by the Court's discussion of those criteria and its conclusion that the state's bad-faith doctrine was preempted despite its association with the insurance industry. *See id.* at 49–50, 107 S.Ct. 1549. The Court described the McFarran–Ferguson factors as helping to identify a law's "connection to the insurer-insured relationship" and said that preemption was appropriate because the bad-faith doctrine

> [did not] define the terms of the relationship between the insurer and the insured; it declare[d] only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages.

*Id.* at 50–51, 107 S.Ct. 1549.

■ In essence, the test for application of the saving clause is whether the law substantively regulates a relationship or merely provides alternative remedies for harms for which ERISA already provides redress. "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 54, 107 S.Ct. 1549. Ohio's § 1308.30 fails this test. It does not regulate or define what constitutes a "wrongful" transfer of a security but provides remedies for such a transfer. When ERISA benefits are wrongly transferred, the beneficiary's exclusive remedy is through § 1132(a)(1)(B).

## C. COMMON LAW CLAIMS

■ Stauter has asserted common law claims against Provident for conversion, negligence, trover, replevin, destruction of evidence, misrepresentation, and bad faith. All of these except bad faith are also asserted against Cambron. The claims for negli-

gence, trover, and replevin are also asserted against Cowen, the Rossmans, Star, and the Diocese.

These claims merely attach new, state-law labels to the ERISA claims for breach of fiduciary duty and recovery of benefits, for the apparent purpose of obtaining remedies that Congress has chosen not to make available under ERISA. "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell v. Equicor-Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed,* 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992). Stauter's remedy against the Plan fiduciaries lies with ERISA, and substitute common law claims are preempted. *See Tolton,* 48 F.3d at 941–43 (holding that ERISA preempted beneficiary's state-law claims against plan, including wrongful death, malpractice, insurance bad faith, and breach of contract); *Kramer,* 80 F.3d at 1083 (holding that ERISA preempted beneficiary's state-law claims against ERISA fiduciary for fraud, negligence, securities violations, and breach of contract).

■ ERISA may also provide limited relief against the nonfiduciary defendants who participated in a breach of fiduciary duty or otherwise violated the Act. *See Hendershott,* 840 F.2d at 342 (holding that a nonfiduciary can be liable under ERISA for aiding and assisting a breach of fiduciary duty); *see also Mertens,* 508 U.S. at 253–58, 113 S.Ct. 2063 (noting provisions of ERISA that impose obligations on nonfiduciaries and holding that nonfiduciaries are not liable for money damages under ERISA for participating in breach of fiduciary duty); *Landwehr v. DuPree,* 72 F.3d 726, 734 (9th Cir.1995) (holding that at least some ERISA claims against nonfiduciaries are available after *Mertens* ). Regardless of the availability of an ERISA action against particular defendants, the relief provided by ERISA is the only relief available for the wrongs Stauter alleges. *See Custer,* 12 F.3d at 419 (holding that "state causes of action asserted [by beneficiaries] against nonfiduciaries are preempted by

ERISA") (citing cases in the Eighth, Ninth, and Eleventh Circuits); *Gibson v. Prudential Ins. Co. of America*, 915 F.2d 414, 418 (9th Cir.1990) (holding that Congress intended ERISA "to preempt claims that relate to an employee benefit plan even if the defendant is a nonfiduciary"); *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564–65 (11th Cir.1987) (holding that ERISA preempts a beneficiary's claim against the nonfiduciary administrator of a benefit plan); *see also Mertens*, 508 U.S. at 261, 113 S.Ct. 2063 (assuming, without deciding, that beneficiary's state-law claims against nonfiduciary were preempted); *id.* at 267 n. 2, 113 S.Ct. 2063 (White, J., dissenting) (stating that "it is difficult to imagine how any common-law remedy for the harm alleged here—participation in a breach of fiduciary duty concerning an ERISA-governed plan—could have survived enactment of ERISA's deliberately expansive pre-emption provision") (internal quotation marks omitted).

## III. CLAIMS BROUGHT BY THE PLANS

The defendants object to the plaintiffs' attempts to distinguish the claims brought by the Plans from those brought by Stauter. They assert that Stauter is the only real party in interest for all of the claims because he is the sole beneficiary of the Plans. We acknowledge that our distinction between Stauter and the Plans may, in this context, appear somewhat artificial. However, application of ERISA requires us to identify the role played by each party with respect to the various claims, and the rules we apply to this case must be the same as those that apply to larger plans with many beneficiaries. As we discuss below, ERISA confers different rights on plans as entities unto themselves than it confers on participants and beneficiaries.

## A. BREACH OF FIDUCIARY DUTY

The plaintiffs argue that even if Stauter's fiduciary claims are preempted, the claims brought by the Plans are not

preempted because plans do not have standing to sue for breach of fiduciary duty under ERISA. We note that the absence of a remedy under ERISA does not necessarily mean that state-law remedies are preserved. *See Tolton*, 48 F.3d at 943. ERISA authorizes participants to sue on behalf of a plan for breach of fiduciary duty, *see* 29 U.S.C. § 1132(a)(2), which is what Stauter did when he filed the 1993 lawsuit in federal court.[3] Permitting such suits by participants is the mechanism which Congress established to enforce the plan's right to recover for a breach of fiduciary duty. *See* 29 U.S.C. §§ 1109(a), 1132(a); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). It would circumvent Congress's enforcement scheme to allow a plan to enforce the duties created in § 1109(a) by suing directly under state law. Therefore, the fact that the Plans have been listed as plaintiffs in these cases does not save the state-law fiduciary-duty claims from preemption.

## B. OTHER CLAIMS

The Plans' other claims against their former fiduciaries are also preempted. In providing for broad preemption under ERISA, Congress sought to establish uniform federal control over the relationships among ERISA entities, including plans, plan sponsors, fiduciaries, and beneficiaries. *Compare Central States, Southeast and Southwest Areas Pension Fund v. Mahoning National Bank*, 112 F.3d 252, 255–56 (6th Cir.1997) (holding that plan's "poorly disguised ERISA withdrawal liability claims" against employer were preempted), *with Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1471–72 (4th Cir.1996) (holding that ERISA did not preempt plan's malpractice claim against nonfiduciary insurance professionals because the state-law duty of care "[did] not depend on ERISA in any way [and did] not affect relations among the principal ERISA entities"). The remedy Congress has provided for the misconduct of a fiduciary is a suit by a beneficiary or participant,

---

**3.** Participants can also sue for breaches of fiduciary duty that harm them as individuals. *See Allinder v. Inter–City Prods. Corp.*, 152 F.3d 544, 551 (6th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1115, 143 L.Ed.2d 110, 67 U.S.L.W. 3438 (1998).

another fiduciary, or the Secretary of Labor. *See* 29 U.S.C. § 1132(a); *Mass. Mut.*, 473 U.S. at 140, 105 S.Ct. 3085. Just as the Plans cannot circumvent Congress's scheme through a state-law claim for breach of fiduciary duty, they cannot circumvent that scheme by using other state causes of action to define the duties and liabilities of an ERISA fiduciary.

■■■■■ The Plans' claims against nonfiduciaries, however, are another matter. ERISA gives plans the ability to sue and be sued in their own right. *See* 29 U.S.C. § 1132(d)(1). They may conduct business and acquire the same rights of action under state law as other entities not created by ERISA. When an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law. *See Michigan Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 550 (6th Cir.1998) (holding that federal courts lacked jurisdiction over breach of contract action brought by ERISA plan against a nonfiduciary plan administrator); *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 722–24 (9th Cir. 1997) (holding that plan could bring state-law claims against a nonfiduciary service provider because "Citibank's relationship with the Trust Fund funds was no different from that between Citibank and any of its customers"); *see also Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1151–53 (3d Cir.1989) (refusing to imply an ERISA cause of action for plans against nonfiduciaries, on assumption that state law provides the remedy); *Pedre Co., Inc., v. Robins*, 901 F.Supp. 660, 666 (S.D.N.Y.1995) (holding that ERISA preempts claims against fiduciaries and claims by participants against nonfiduciaries, but not claims against nonfiduciaries by plans and their sponsors and trustees). Therefore, to the extent that the Plans have asserted state-law claims against non-ERISA entities, those claims are not preempted. We express no opinion on the merits of these claims.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** in part, **REVERSE** in part, and **RE-** **MAND** this case for further proceedings consistent with this opinion.

GUY, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's opinion except for the conclusion that the Plans' claims against nonfiduciaries are not preempted. Although I agree that a plan's claims against nonfiduciaries are not always preempted, I believe that under the circumstances presented here, these claims are preempted.