**TOLEDO BLADE NEWSPAPER UNIONS–BLADE PENSION PLAN, et al., Plaintiff,**

v.

**INVESTMENT PERFORMANCE SERVICES, LLC, et al., Defendant.**

**No. 3:04 CV 7123.**

United States District Court, N.D. Ohio, Western Division.

June 15, 2005.

---

64. Tr. at 265.

65. *Id.* at 202.

66. *Id.*

67. *Id.* at 202–03.

68. *Id.*

Dennis E. Murray, Sr., Donna Jean A. Evans, Murray & Murray, Sandusky, OH,

Jeffrey J. Wedel, Squire, Sanders & Dempsey, Cleveland, OH, for Plaintiffs.

Anastasia K. Hanson, Theodore M. Rowen, Spengler Nathanson, Toledo, OH, Derek C. Anderson, Pete S. Michaels, Deborah G. Evans, Michaels & Ward, Boston, MA, Thomas S. Gigot, Groom Law Group, Washington, DC, Theodore M. Rowen, Arthur S. Linker, Robert W. Gottlieb, Katten Muchin Rosenman, New York City, Richard S. Walinski, Cooper & Walinski, Toledo, OH, for Defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on the motion of Defendants Investment Performance Services, LLC ("IPS"), Thomas R. Shanklin ("Shanklin"), and Gregory J. Suchocki ("Suchocki") to dismiss Counts One and Two and strike Plaintiffs' jury demand (Doc. No. 35), to which Plaintiff has filed a Response (Doc. No. 48), Defendant, a Reply (Doc. No. 54), and Plaintiff, a Sur-reply (Doc. No. 57). Also before the Court is the motion of Defendant David J. Sloan ("Sloan") to dismiss Count One (Doc. No. 58), to which Plaintiff has filed a Response (Doc. No. 61) and Defendant, a Reply (Doc. No. 64) and an Amended Reply (Doc. No. 66). This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a) and 29 U.S.C. § 1132(e)(1). For the following reasons, the motion of IPS, Shanklin, and Suchocki is granted in part and denied in part as described below, and the Sloan's motion is denied.

### BACKGROUND

The Court at this stage assumes the facts alleged in the Corrected First Amended Complaint ("the Complaint"). Plaintiff Toledo Blade Newspaper Unions—Blade Pension Plan and Trust ("the Plan") claims to be an "employee benefit plan" as defined by Section 3(3) of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3). The individual Plaintiffs, who are the Plan's trustees ("the Trustees"), claim to be "fiduciaries" of the Plan as defined by ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). In 1995, the Trustees contracted with Defendant IPS to provide investment advisor consulting services to the Plan. The contracted-for services included "identifying, investigating, recommending and monitoring the Plan's investments, investment strategies and investment managers." (Doc. No. 16, ¶ 17). IPS acknowledged in writing that it owed the Plan fiduciary duties "in the areas of manager search and asset allocation." *Id.*

In March of 2000, two IPS employees, Defendants Shanklin and Suchocki, advised the Trustees that they should change the Plan's asset allocations and that "the Plan's improved financial health suggested more risk-tolerance." *Id.* at ¶ 19. Shanklin and Suchocki recommended that the Plan hire Defendant Ark Asset Management Co., Inc. ("Ark") to manage the growth portion of the Plan's portfolio. The Trustees asked IPS to recommend alternative growth managers.

In April of 2000, the Plan and IPS signed a new agreement under which IPS would review and revise the Plan's written investment policy and guidelines, recommend allocation of Plan assets, and recommend investment managers. IPS, in an Investment Manager Review report prepared by Shanklin, Suchocki and Defendant Sloan, also an IPS employee, recommended two investment managers, one of which was Ark. The Trustees hired Ark "as a growth investment manager" and allocated $36 million, or thirty percent of the Plan's assets, to Ark.

IPS, and specifically its employee Suchocki, assisted in the transfer of assets between the old and new managers. IPS also suggested several changes to the initial investment guidelines for Ark's management of the Plan's assets, including a change from the Russell 2000 Growth Index as a volatility benchmark to the Russell 3000 Growth Index, and a change allowing Ark to invest in individual securities "up to 5% at cost or up to 10% at market value of the portfolio." (Doc. No. 16, ¶ 26).

The Plan's assets performed poorly under Ark's management, prompting the Trustees to question IPS about Ark. Suchocki told the Trustees that Ark had informed him that Ark did not consider volatility issues relative to any benchmark when selecting individual stocks, and that had he known the nature of Ark's Specialty Product, IPS would not have advised the Plan to invest such a large portion of its assets with Ark. The Plan pressed IPS to ensure that Ark was investing according to the Plan's Investment Policy Statement, a "plan document." IPS contacted Ark, which responded that its investment style could not allow it to comply, and suggested that the Plan change its Investment Policy. The Trustees terminated IPS in June of 2002, and later terminated Ark, at which time the funds under Ark's control had diminished from $36 million to approximately $12 million.

Plaintiff claims that IPS and its employees failed to adequately investigate Ark and that they recommended that the Plan invest with Ark despite the fact that they "knew or should have known that Ark was not an appropriate growth investment manager for that portion of the Plan portfolio." *Id.* at ¶ 21. In Count One of their Complaint, Plaintiffs allege that IPS, Ark, and their employees individually named as Defendants were each an ERISA "fiduciary," and that each breached the fiduciary duties owed to the plan under ERISA and is jointly liable as a "co-fiduciary" for breaches of duty by the others.

In Count Two, Plaintiffs set forth an Ohio common-law negligence claim, in which they assert that:

IPS had a duty, as an investment advisor hired by the Plan, to provide investment advice and conduct a manager search in a competent manner. . . .

IPS failed to conduct an adequate investigation of investment managers and its recommendation of Ark to manage the growth portfolio for the Plan was inappropriate.

IPS failed to understand the true nature of the investment strategy of Ark and negligently recommended that the Plan invest a large portion of the Plan assets with an investment manager that would not invest according to the Plan documents and would place the fund at risk of large losses.

(Doc. No. 16, ¶¶ 37–39). Plaintiffs allege that the Trustees reasonably relied on the Defendants' advice to their detriment. Plaintiffs indicate in their Sur-reply that Count Two is plead in the alternative, to the extent that the Court finds that IPS and/or its Defendant employees were not ERISA fiduciaries.

Defendants Shanklin and Suchocki move to dismiss Count One as to them because they claim Plaintiffs have failed to plead specific facts sufficient to show that they as individuals were "fiduciaries" as defined by ERISA. Sloan has similarly moved. Additionally, IPS, Shanklin, and Suchocki move to dismiss Count Two, claiming it is preempted by ERISA. Finally, IPS, Shanklin and Suchocki move to strike Plaintiffs' jury demand if Count Two is dismissed.

### DISCUSSION

#### A. Motion to Dismiss Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Westlake, supra,* at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.2004).

#### B. ERISA Claims as to Shanklin and Suchocki

ERISA requires those designated as "fiduciaries" to discharge their duties with respect to a plan: "solely in the interest of the participants and beneficiaries" and exclusively for the purpose of providing the participants and beneficiaries with benefits and of defraying the plan's administration expenses; "with the care skill, prudence and diligence" that a prudent man would use in similar circumstances; "by diversifying the investments of the plan so as to minimize the risk of large losses," unless circumstances make diversification imprudent; and "in accordance with the documents and instruments governing the plan insofar as such documents" are consistent with ERISA. 29 U.S.C. § 1104(a)(1). Fiduciaries who breach the duties ERISA places upon them are personally liable to the plan for its resultant losses and the fiduciaries' resultant profits. 29 U.S.C. § 1109(a). Additionally, a fiduciary may be liable for a breach of fiduciary duty by a co-fiduciary: if he knowingly participates in or conceals what he knows to be a breach of duty by the other fiduciary; if,

through his own breach of fiduciary duty, he enables the other fiduciary to commit a breach; or if he knows of a breach by another fiduciary and does not make reasonable efforts to remedy it. 29 U.S.C. § 1105(a).

Shanklin and Suchocki move to dismiss Plaintiffs' ERISA-based breach-of-fiduciary-duty claims on the grounds that Plaintiffs have failed to allege specific facts to support their assertion that Shanklin and Suchocki acted as "fiduciaries" under ERISA, a prerequisite to claiming that they breached ERISA's fiduciary duties. Because it cannot be said that Plaintiffs can prove no set of facts entitling them to relief, the motion will be denied.

■■■ "[T]he definition of a fiduciary under ERISA is a functional one, is intended to be broader than the common law definition, and does not turn on formal designations such as who is the trustee." *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999). Under ERISA, fiduciary status is keyed to discretionary authority over a plan, its investments, or its administration, or to the provision of "investment advice":

[A] person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Moreover, since a person is a fiduciary "to the extent" that he or she does the enumerated actions, the same person may be a "fiduciary" in some

but not all of his activities. *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 417–18 (5th Cir.1990).

The Department of Labor's regulations explain what it means to provide "investment advice":

A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii) of the Employee Retirement Income Security Act of 1974 (the Act) and this paragraph, only if:

(i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and

(ii) Such person either directly or indirectly (e.g., through or together with any affiliate)—

(A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or

(B) Renders any advice described in paragraph (c)(1)(I) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3–21.

■■■ While, as Shanklin and Suchocki correctly point out, federal courts hold that

the officers and employees of a corporate fiduciary do not automatically acquire ERISA fiduciary status by virtue of their positions, courts also hold that an officer or employee may be an ERISA fiduciary, depending on the extent of responsibility and control the individual exercises. *See Smith v. Provident Bank,* 170 F.3d 609, 613 (6th Cir.1999) (holding that to the extent the corporate fiduciary delegated duties and powers to its employee and another entity, the employee and entity "personally could become ERISA fiduciaries and be liable ..."); *Confer v. Custom Eng'g Co.,* 952 F.2d 34, 35 (3d Cir.1991) (holding that officers who exercise discretion on behalf of a corporate fiduciary are not themselves fiduciaries under ERISA § 3(21)(A)(iii) unless they have "individual discretionary roles as to plan administration," as, for example, where "the corporation delegates some of its fiduciary responsibilities to an officer"); *Bell v. Executive Comm. of the United Food & Commercial Workers Pension Plan for Employees,* 191 F.Supp.2d 10, 15 (D.D.C.2002) ("[T]here is no per se rule against holding an individual employed by the corporate fiduciary as an ERISA fiduciary, but rather it is a factual determination involving an assessment of the extent of responsibility and control exercised by the individual with respect to the Plan.").

■ It cannot be said beyond a doubt that the Plaintiffs can prove no set of facts establishing that Shanklin and Suchocki individually qualified as ERISA fiduciaries. Specifically, Plaintiffs have alleged facts consistent with a claim that Shanklin and Suchocki rendered "investment advice" to the Plan as that term is defined in the Department of Labor regulations. That is to say, Plaintiffs' Complaint sufficiently alleges that Shanklin and Suchocki made recommendations to the plan as to the advisability of investing in securities or other property and did so on a regular basis pursuant to an agreement—between them and either the Plan or a Plan fiduciary—that their services would be a primary basis for the Plan's investment decisions and that they would render advice based on the Plan's particular needs regarding investment strategy, portfolio composition, or diversification of assets. *See* 29 C.F.R. §§ 2510.3–21(c)(1)(i), (ii)(B).

Plaintiffs allege that Shanklin and Suchocki worked for IPS in fulfillment of its obligations—which spanned the years from 1995 to 2002—to the Plan to identify, investigate, recommend, and monitor the Plan's investments and were, along with Sloan, the IPS employees primarily responsible for providing investment advice to the Plan. Specifically, Plaintiffs claim Shanklin and Suchocki advised the Trustees in March of 2000 to change the Plan's asset allocations and that the Plan's investments could tolerate more risk, and recommended the products of a particular investment manager, Ark. Plaintiffs further allege that in April, 2000 Shanklin and Suchocki prepared a report evaluating the advisability of investing with Ark and another manager. The Complaint alleges that Suchocki stated in 2001 that his evaluation of Ark and his understanding of its investment products was integral to his and IPS's recommendation that the Plan invest a large portion of its portfolio in Ark's investment products. Based on these allegations that specifically mention Shanklin and Suchocki, it is not beyond doubt that Plaintiffs can show Shanklin and Suchocki were fiduciaries.

Moreover, the Complaint provides in Paragraph Thirteen that "Defendants IPS, Shanklin, Suchocki and Sloan are referred [to] hereinafter as 'IPS.'" This indicates that the many additional allegations in the complaint describing the actions of "IPS" may refer to actions taken by Shanklin and Suchocki. These actions certainly could support a finding of fiduciary status.

Therefore, considering that the Court must view the Complaint in the light most favorable to the Plaintiffs and construe all pleadings so as to do substantial justice, Fed.R.Civ.P. 8(f), dismissal would be inappropriate in any event.[1] Shanklin and Suchocki's motion to dismiss shall be denied.

### C. ERISA Claims as to Sloan

Sloan also moves to dismiss Count One on the grounds that Plaintiffs have failed to allege specific facts to support their assertion that he acted as a "fiduciary" under ERISA. However, as in the cases of Shanklin and Suchocki, the Complaint sufficiently alleges that Sloan made recommendations to the plan as to the advisability of investing in securities or other property and did so on a regular basis pursuant to an agreement—between Sloan and either the Plan or a Plan fiduciary—that his services would be a primary basis for the Plan's investment decisions and that he would render advice based on the Plan's particular needs regarding investment strategy, portfolio composition, or diversification of assets, see 29 C.F.R. §§ 2510.3–21(c)(1)(I), (ii)(B). The Court cannot say that Plaintiffs can prove no set of facts entitling them to relief.

Plaintiff alleges that Sloan was one of the IPS employees who primarily provided investment advice to the plan and who co-authored, with Shanklin and Suchocki, the report evaluating Ark and another investment manager candidate. As Plaintiff asserts that its references to "IPS" included Sloan, and as the Court is constrained to view the Complaint in the light most favorable to the Plaintiffs, and because, as noted above, the Plaintiffs' allegations regarding the actions of "IPS" cannot be said beyond doubt to be insufficient, Plaintiffs' inclusion of Sloan under the denomination "IPS" makes dismissal inappropriate at this time. After discovery, it may very well be clear that Sloan, and/or Shanklin and Suchocki, for that matter, did not function as ERISA "fiduciaries" as to the Plan. However, as in Owens v. Johnson & Johnson Publication, "[w]hile recovery may be unlikely in the present action, it is not beyond doubt." 816 F.2d 681 (6th Cir.1987). Sloan's motion to dismiss Count One shall be denied.

### D. State-law Negligence Claims and ERISA Preemption

Defendants IPS, Shanklin, and Suchocki claim that ERISA preempts Count Two of the Corrected Amended Complaint, which sets out state-law claims of negligent provision of investment advice. As an initial matter, the Court notes that while Plaintiffs purport to assert Count Two against "IPS," their statement in Paragraph Thirteen that the individual Defendant IPS employees will be referred to in the Complaint, together with IPS itself, as "IPS," indicates that Plaintiffs also assert claims for professional negligence against Shanklin, Suchocki, and Sloan. Additionally, Plaintiffs indicate in their response that Count Two is plead in the alternative: Plaintiffs assert common-law negligence claims to the extent that Defendants are found not to be fiduciaries under ERISA.

The question before this Court is whether ERISA prohibits the Plan and its Trustees from asserting against non-fiduciaries claims of professional negligence, plead in the alternative to ERISA breach-of-fiduciary-duty claims. The Trustees may not assert such claims; however, the Plan itself may. ERISA plans as entities may assert "garden-variety" common-law claims against non-fiduciaries, even where

---

1. While the Court notes that Plaintiffs certainly could have stated the allegations in their complaint more precisely, the Court does not believe Plaintiffs have run afoul of the liberal pleading standard of Rule 8(a).

the claims arise from conduct that would amount to a breach of fiduciary duty if undertaken by an ERISA fiduciary. Moreover, because it is unclear at this point whether the defendants are or are not ERISA fiduciaries, the Plan and may plead such claims in the alternative to its ERISA breach-of-fiduciary-duty claims.

### 1. Preemption

ERISA preempts all state laws and claims "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Sixth Circuit has recently noted the Supreme Court's narrowing of ERISA's preemptive scope, which the Supreme Court had previously described as "conspicuous for its breadth" and "deliberately expansive." *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). As the Sixth Circuit has explained, the Supreme Court now instructs that the words "relate to" must not be taken to their "most logical extension," or else " 'pre-emption would never run its course,' " because, as Justice Scalia has noted, " 'everything is related to everything else.' " *Id.* (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) and *Cal. Div. Of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 335, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring)).

 Courts must therefore " 'go beyond the unhelpful text' " of ERISA and look to the purpose of ERISA preemption: "to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans." *Id.* at 698, 115 S.Ct. 1671 (quoting *Travelers*, 514 U.S. at 656, 115 S.Ct. 1671). The Sixth Circuit therefore has determined that:

ERISA preempts state laws that (1) "mandate employee benefit structures or their administration;" (2) provide "alternate enforcement mechanisms" [to employees]; or (3) "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself."

*Id.* (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir.1996)) (alteration by this Court). "Congress did not intend, however, for ERISA 'to preempt traditional state-based laws of general applicability that do not implicate relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries.' " *Penny/Ohlmann/Nieman*, 399 F.3d at 698 (quoting *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir.1998)).

 ERISA specifically allows the Secretary of Labor, or a participant, beneficiary, or fiduciary, to bring a civil action seeking relief for the plan for a breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). When an entity entitled to bring an action under § 1132(a)(2) sues a non-fiduciary on a state-law claim alleging wrongs for which ERISA provides relief, the state action is preempted, despite the unavailability of an ERISA remedy due to the defendant's status as a non-fiduciary. *See Smith v. Provident Bank*, 170 F.3d 609, 615–16 (6th Cir.1999).

 However, "ERISA confers different rights on *plans* as entities unto themselves than it confers on participants and beneficiaries." *Smith*, 170 F.3d at 616 (emphasis added). Unlike a beneficiary or fiduciary, an ERISA plan itself is not entitled under § 502(a)(2) to bring a lawsuit to recover damages for a breach of fiduciary duty; nevertheless, a plan may sue and be sued in its own right. 29 U.S.C.

§ 1132(a)(2), (d)(1). ERISA plans, like beneficiaries and fiduciaries, may not circumvent ERISA's civil enforcement scheme by bringing state causes of action against ERISA fiduciaries. *Smith,* 170 F.3d at 617; *Penny/Ohlmann/Nieman,* 399 F.3d at 698 (holding that ERISA governs relations between the traditional ERISA plan entities, including the plan and fiduciaries). A plan may, however, assert garden-variety state-law claims against non-fiduciaries. *Smith,* 170 F.3d at 617.

In *Smith,* a beneficiary named Stauter and two plans sued, among other parties: Provident Bank, which was a plan trustee and fiduciary; Cowen & Co. ("Cowen"), which was a financial entity that provided services to Provident in the management of plan transactions; and James Cambron ("Cambron"), a Provident employee. *Smith,* 170 F.3d at 611–13. The Sixth Circuit recognized, at the motion-to-dismiss stage, that Cowen and Cambron might or might not have been plan fiduciaries. *Id.* at 613 ("To the extent that Provident delegated duties and powers to Cowen and Cambron, they personally could become ERISA fiduciaries.... If Cowen and Cambron do not meet ERISA's definition of a fiduciary, neither can be liable for breach of fiduciary duty with respect to management of an ERISA plan.")

Stauter had an account through the plans that was managed by Provident Bank. *Id.* at 612. He instructed Provident to purchase 1,000 shares of Ameritrust Bank stock for his account. *Id.* On the same day, the Catholic Archdiocese of Cleveland issued an identical order for its own Provident account. *Id.* Cowen & Co. executed Stauter's purchase for Provident, but Provident and Cowen mistakenly failed to execute the Archdiocese's request. *Id.* When the Archdiocese noticed the error, Provident corrected it by taking the shares from Stauter's account and transferring them to the Archdiocese's account, and crediting Stauter $10,550, the amount he had paid less dividends. *Smith,* 170 F.3d at 612.

In their lawsuit, Stauter and the plans alleged that Provident breached its fiduciary duty under ERISA and that Provident, Cowen, and Cambron breached state-law fiduciary duties. *Id.* at 612. Additionally, the plaintiffs set forth, *inter alia,* state-law claims for negligence, conversion, and misrepresentation against Provident and Cambron and a negligence claim against Cowen & Co. *Id.* at 615. The district court ruled that the state-law claims were preempted, and the plaintiffs appealed. *Id.* at 612.

The Sixth Circuit considered the common-law breach-of-fiduciary-duty claims separately from the "other" state-law claims; it also distinguished between claims brought by the beneficiary and those brought by the plan, and between those brought against fiduciaries and those brought against non-fiduciaries. *Id.* at 613–17. The *Smith* court held: the state-law claims for breach of fiduciary duty brought by both the beneficiary and the plan against both ERISA fiduciaries and non-fiduciaries were preempted, *id.* at 614, 616; the "other" common-law claims brought by the beneficiary against ERISA fiduciaries and non-fiduciaries alike were preempted, *id.* at 615–16; the "other" common-law claims brought by the plan against ERISA fiduciaries were preempted, *id.* at 616–17; *but the "other" common-law claims brought by the plan against non-fiduciaries were not preempted, id.* at 617. Of import to the present inquiry is that *Smith* held that while a beneficiary, as an entity with a cause of action for breach of fiduciary duty as to the plan under § 502(a)(2), could sue neither fiduciaries nor non-fiduciaries on state-law claims based on actions that would amount

to a breach of fiduciary duty under ERISA, an ERISA plan itself *could* sue non-fiduciaries on identical claims.

### a. The Trustee's Claims Against Non–Fiduciaries

*Smith* held that ERISA preempted the common-law claims asserted by the beneficiary, Stauter, against non-fiduciaries because those claims merely attached "new state-law labels to the ERISA claims for breach of fiduciary duty," and because, though "ERISA may . . . provide limited relief against the nonfiduciary defendants who participated in a breach of fiduciary duty or otherwise violated the Act[,] . . . . Regardless of the availability of an ERISA action against particular defendants, the relief provided by ERISA is the only relief available for the *wrongs* Stauter alleges." *Smith*, 170 F.3d at 615 (emphasis added).

ERISA § 502(a)(2) provides that participants, beneficiaries, and fiduciaries may sue for appropriate relief for a violation of fiduciary duty as to the plan. 29 U.S.C. § 1132(a)(2).

In this case, both the Plan and its Trustees assert common-law claims against any defendants determined to be non-fiduciaries under ERISA. ERISA preempts the Trustees' claims. Because the Trustees claim in their Complaint to be "named fiduciaries" under ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2) and "fiduciaries" under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), the Court will assume for the purposes of deciding this issue that they are. Because the trustees are fiduciaries, a remedy for breach of fiduciary duty exists for them under ERISA. Moreover, the acts the Trustees allege Defendants committed, if done by fiduciaries, would *certainly amount to a* breach of fiduciary duty. Indeed, the Trustees' state-law claims are premised on the same factual allegations as is their ERISA breach-of-fiduciary-duty claim. As the Sixth Circuit explained in *Smith*,

ERISA preempts such claims. As in *Smith*, the fact that Defendants may be non-fiduciaries against whom a suit may not be maintained under ERISA does not alter this result.

The Court is aware that its conclusion that ERISA preempts state-law claims against non-fiduciaries brought by trustee-fiduciaries appears, on its surface, to conflict with *Smith's* characterization of *Pedre Co. v. Robins*, 901 F.Supp. 660 (S.D.N.Y. 1995), which the Sixth Circuit described as holding that "ERISA preempts claims against fiduciaries and claims by participants against nonfiduciaries, but *not* claims against nonfiduciaries by plans *and their sponsors and trustees*," *Smith*, 170 F.3d at 617 (emphasis added), and with the United States District Court for the Western District of Tennessee's interpretation of *Smith* in conformity with this description in *Guardsmark, Inc. v. BlueCross & BlueShield of Tenn.*, 169 F.Supp.2d 794, 802 (W.D.Tenn.2001). However, the Court's holding today is entirely consistent with both the Sixth Circuit's reasoning in *Smith* and the United States District Court for the Southern District of New York's actual holding in *Pedre*. First, under the logic of *Smith*, claims by trustee-fiduciaries should be treated identically to those brought by beneficiaries, because trustee-fiduciaries may, like beneficiaries (and unlike plans themselves), bring civil actions under ERISA § 502(a)(2) seeking recovery for the plan for breaches of fiduciary duty. Because trustee-fiduciaries and beneficiaries are identically situated, the Court sees no reason, given the Sixth Circuit's reasoning in *Smith*, to treat claims by trustee-fiduciaries against non-fiduciaries differently from those brought by beneficiaries against non-fiduciaries. Second, *Pedre* did not hold, as suggested in *Smith* and *Guardsmark*, that any and all trustees could bring state-law claims against non-fiduciaries; instead, the court

specifically held that: "funds, fund trustees and fund sponsors *who have no cause of action under ERISA* may assert garden-variety claims at common law." *Pedre*, 901 F.Supp. at 666.(Emphasis added). Here, as explained above, the trustees, as plan fiduciaries, have a cause of action under ERISA for the wrongs alleged.

Because the Trustees have a cause of action under ERISA for breach of fiduciary duty, ERISA preemts their state-law claims against non-fiduciaries for the same wrongs. The Court will grant the motion of IPS, Shanklin, and Suchocki to dismiss Count Two as to claims by the Trustees.

### b. The Plan's Claims Against Non–Fiduciaries

Under *Smith v. Provident Bank*, it is not beyond doubt, at this stage, that ERISA preempts the Plan's state-law claims against those defendants found to be non-fiduciaries. After holding that a *beneficiary* could not bring claims against non-fiduciaries for wrongs for which ERISA provides a remedy, *Smith* held that *plans* could do just that. *Smith*, 170 F.3d at 615–17. The court in *Smith* found that all of the plaintiffs' state-law claims, including those against defendants Cowen and Cambron, "merely attach[ed] new, state-law labels to the ERISA claims for breach of fiduciary duty and recovery of benefits.... " *Id.* at 615. However, after holding that the plan could not assert those claims against fiduciaries, the Sixth Circuit explained that "[t]he Plans' claims against nonfiduciaries," which the court had already acknowledged potentially included Cowen and Cambron, "are another

matter." *Smith* explained that "[w]hen an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law. Therefore, to the extent that the Plans have asserted state-law claims against non-ERISA entities, those claims are not preempted." *Smith*, 170 F.3d at 617 (internal citations omitted).

In support of this conclusion, Smith cited with approval to several cases from other jurisdictions, including *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715 (9th Cir. 1997), and *Pedre Co. v. Robins*, 901 F.Supp. 660, 666 (S.D.N.Y.1995). *Pedre* held that plans with "no cause of action under ERISA may assert garden-variety claims at common law." 901 F.Supp. at 666. *Arizona State Carpenters* held that a plan could sue a non-fiduciary service provider where the plan's relationship with the defendant "was no different than that between [the defendant] and any of its customers." 125 F.3d at 724. The Ninth Circuit noted the three areas in which ERISA preemption operates that were identified by the Fourth Circuit in *Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4th Cir.1996), quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695. *Id.* at 723, 115 S.Ct. 1671. As stated above, the Sixth Circuit similarly took notice of these areas, citing to *Coyne*, in *Penny/Ohlmann/Nieman.*[2] 399 F.3d at 698. The *Arizona State Carpenters* court then concluded that:

---

**2.** As stated above, the three *"Travelers* categories" noted by *Coyne, Penny/Ohlmann/Nieman,* and *Arizona State Carpenters* are those: [S]tate laws that (1) "mandate employee benefit structures or their administration;" (2) provide "alternate enforcement mechanisms" [to employees]; or (3) "bind employers or plan administrators to particular

choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Penny/Ohlmann/Nieman,* 399 F.3d at 698 (quoting *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1468 (4th Cir.1996)) (alteration by this Court).

[W]here state law claims fall outside the three areas of concern identified in *Travelers,* arise from state laws of general application, do not depend upon ERISA, and do not affect the relationships between the principal ERISA participants; the state law claims are not preempted.

*Ariz. State Carpenters,* 125 F.3d at 724.

Likewise, the Sixth Circuit in *Penny/Ohlmann/Nieman* determined that ERISA did not preempt a plan's state-law breach-of-contract and negligent-misrepresentation claims against a non-fiduciary where the claims did not fall into any of the three *Travelers* categories and did not "implicate 'relations among the traditional ERISA plan entities.'" *Penny/Ohlmann/Nieman,* 399 F.3d at 700, 703–04. The Sixth Circuit, quoting the Ninth Circuit, stated that " 'ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity.' " *Id.* at 700 (quoting *Gen. Am. Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1522 (9th Cir.1993)). Moreover, even "the fact that professional malpractice claims require some interpretation of ERISA law does not mean that these claims are preempted by ERISA." *Mertens v. Kaiser Steel Retirement Plan,* 829 F.Supp. 1158,.1162 (N.D.Cal.1992).

■ In this case, it cannot be said at the motion to dismiss stage that ERISA preempts the Plan's state-law claims against non-fiduciaries. The Plan asserts, in Count Two, garden-variety state-law causes of action based on common-law principles of general application. The claims do not fall within the three *Travelers* categories. The Court cannot say beyond a doubt that the claims implicate relations among traditional ERISA entities.

The Plan alleges that the non-fiduciary defendants had a duty to provide investment advice and to conduct an investment manager search in a competent manner and that duty was breached when they failed to adequately investigate Defendant Ark, failed to understand the nature of Ark's investment strategy, and recommended that the Plan hire an investment manager that would not invest according to the guidelines of the Plan documents. *See* (Doc. No. 16, ¶¶ 37–39). These claims do not fall into any of the three *Travelers* categories; i.e., they do not: "mandate employee benefit structures or their administration," provide "alternate enforcement mechanisms" to employees, or "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself."

Moreover, the Plan asserts its state-law claims solely against non-fiduciary professional service providers, and it therefore does not appear that they implicate relations between traditional ERISA entities. While it is perhaps conceivable that a claim against the non-fiduciary employee of an ERISA fiduciary might "implicate" the relationship between the fiduciary and the plan, it cannot be said at this point that such implication is beyond doubt. Dismissal of the Plan's claims on that ground would therefore be inappropriate. Defendant may, of course, argue that position in a motion for summary judgment if discovery so warrants.

Finally, the fact that the complaint references ERISA plan documents is not fatal to the Plan's claims at this time. It appears that the complaint merely refers to the plan documents as the source of the Plan's needs as an investment client. The fact that the client's requirements were set out in ERISA plan documents does not necessarily make the Plan's relationship with its investment advisors any different from that between Defendants and any of its other clients. It is not beyond doubt

that the Plan's claim will require the Court to "interpret" plan documents. At this point, it seems that the connection to ERISA is simply too "tenuous, remote, or peripheral" to require preemption. *See Shaw v. Delta Air Lines,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). If discovery shows that, for whatever reason, the Plan's claim is other than "garden-variety," Defendant may revisit that issue at the summary judgment stage.

The Defendant argues that ERISA preempts the Plan's claims against non-fiduciaries because the claims merely attach state-law labels to claims for breach of fiduciary duty and because ERISA provides remedies for the wrongs alleged. However, as *Smith* made clear, ERISA plans, which have no ERISA cause of action for breach of fiduciary duty, may assert state-law claims against non-fiduciaries, even where the state-law claims are premised on wrongs that would amount to a breach of fiduciary duty under ERISA. Defendant claims to find support for its position in *Miller v. Retirement Funding Corporation,* 953 F.Supp. 180 (W.D.Mich. 1996) and *Zuniga v. Blue Cross & Blue Shield of Michigan,* 52 F.3d 1395 (6th Cir.1995). Defendants' reliance on *Miller* and *Zuniga* is misplaced.

*Miller* held that a trustee could not could not bring a claim for negligent provision of investment advice against a non-fiduciary corporation that had advised the plan, despite the plaintiff's potential lack of standing to sue under ERISA. 953 F.Supp. at 184. The *Miller* court acknowledged the "growing body of caselaw recognizing that state law claims brought on behalf of an ERISA plan in connection with professional services are not preempted," but felt constrained to hold to the contrary by the Sixth Circuit's holding in *Zuniga. Id.* at 184–85. *Zuniga* held that "although ERISA will not preempt state law claims based on wrongs for which ERISA provides no remedies[,] ... where rights are guaranteed by ERISA, the remedy for such rights under ERISA is exclusive." 52 F.3d at 1401 (alterations in original). The court found that ERISA provided a cause of action for the relief the plaintiff sought and explained that "[a]lthough the remedy is not available to *Zuniga,* that does not mean that no remedy exists." *Id.*

The Court first notes that neither *Miller* nor *Zuniga* involved claims by an ERISA *plan.* Rather, those cases involved claims by plan *trustees and/or beneficiaries,* and, as the *Smith* court explained, ERISA confers differing rights on those entities. Moreover, *Smith* directly contradicts any implication that may be derived from *Miller's* and *Zuniga's* holdings that a plaintiff's lack of standing to bring an ERISA claim does not preclude ERISA from preempting state-law claims based on wrongs for which ERISA provides—to someone—a remedy, that ERISA preempts claims by plans against non-fiduciaries for conduct that would be a breach of fiduciary duty under ERISA. The Court finds the more recent and thorough opinion in *Smith* more persuasive. *See Watts v. Burkhart,* No. 89–6160, 1991 U.S.App. LEXIS 29198, at *28 (6th Cir. Dec. 13, 1991) (holding that where Sixth Circuit authority conflicts, a court should follow the line of authority it finds most persuasive).

*Smith* allowed an ERISA plan to bring, against non-fiduciary professional service providers, state-law claims seeking relief for wrongs for which ERISA provides relief to other entities. The Plan here may do the same.

### 2. Pleading in the Alternative

In *Pedre Co. v. Robins,* a case the Sixth Circuit cited to with approval in *Smith,* the

court explained that while "plaintiffs may not double-plead their injuries, simultaneously seeking recovery for identical conduct under both ERISA and state law," that standard was unhelpful at the motion to dismiss stage. 901 F.Supp. at 666. The Court held that where "the evidence has not yet shown whether defendants are fiduciaries ... [the court] accept[s] that plaintiffs may be pleading in the alternative, which they are entitled to do at this stage...." *Id.* The court allowed the plaintiffs to set forth simultaneously ERISA claims for breach of fiduciary duty and, to the extent the defendants were non-fiduciaries, state-law claims for fraud, negligence, unjust enrichment, malpractice, breach of contract, conspiracy, and indemnification. *Id.* at 665–66.

■ Here, as in *Pedre,* it is unclear at the motion to dismiss stage whether some or all of the defendants are non-fiduciaries under ERISA. The Plan may therefore plead its claims in the alternative.[3] The Court will deny Defendants' motion to dismiss Count Two as to claims by the Plan.

### E. Jury Demand

Defendant urges the Court to strike the Plaintiffs' jury demand, since Plaintiffs are not entitled to a jury trial on their ERISA claims. *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 406 (6th Cir.1998). However, because the Court has denied Defendants' motions to dismiss the state common-law claims the Plan asserts in Count Two, on which the Plan is entitled to a jury trial, the Court will also deny Defendants' motion to strike the jury demand.

#### Conclusion

Based on the foregoing, the motion of Defendants IPS, Shanklin, and Suchocki to dismiss Counts One and Two and strike Plaintiffs' jury demand (Doc. No. 35) is

granted as to the individual Plaintiffs' Count Two claims, but is otherwise denied, and Defendant Sloan's motion to dismiss Count One (Doc. No. 58) is denied.

IT IS SO ORDERED.

### · *JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the motion of Defendants IPS, Shanklin, and Suchocki to dismiss Counts One and Two and to strike Plaintiffs' jury demand (Doc. No. 35) is granted as to the individual Plaintiffs' Count Two claims, but is otherwise denied.

FURTHER ORDERED that Defendant Sloan's motion to dismiss Count One (Doc. No. 58) is denied.

---

**3.** However, as explained above, to the extent discovery shows the defendants to be ERISA

fiduciaries, ERISA will preempt the Plan's claims against them.